**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Lucille M. Aamodt, et al.<br><br>        **Plaintiffs,**<br><br>      **v.**<br><br>Unisys Corporation,<br><br>        **Defendant** | Civ. A. No. 03-3925 |

**DEFENDANT UNISYS CORPORATION'S MEMORANDUM OF LAW**

**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

JOSEPH J. COSTELLO (No. 44327)
PAUL C. EVANS (No. 84535)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103

JOSEPH A. TEKLITS (No. 51831)
Unisys Corporation
Unisys Way
MS E8-114
Blue Bell, Pennsylvania 19424
Attorneys for Defendant Unisys Corporation

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. PROCEDURAL HISTORY .................................................................................. 4

III. STATEMENT OF UNDISPUTED FACTS ....................................................... 7

IV. ARGUMENT ........................................................................................................ 7

    A.    Summary Judgment Standard .............................................................. 7

    B.    Plaintiffs Bear The Burden Of Proving Their Individual Breach Of Fiduciary Duty Claims ........................................................................... 8

    C.    Summary Judgment Plaintiffs Mahoney, George, Barnes, King, Zaber and Portzline Have Failed To Adduce Evidence Of Any Material Misrepresentation Or Omission. ......................................................... 10

        1.    Unisys Clearly Conveyed Its Right To Change Or Terminate the Unisys PRM Plan .................................................................. 12

        2.    This Case Is Not Governed By The Findings Made In The October 2005 Adair Trial Regarding Employees Who Received Retiree Medical Benefits Under The Burroughs PRM Medical Plan. ................. 17

        3.    Viewed In The Context Of This Case, The Truthful Statements Made To Plaintiffs Who Have Admitted Possession Of The Unisys PRM SPD Cannot, As A Matter of Law, Constitute Material Misrepresentations And/Or Omissions .................................................... 24

    D.    Summary Judgment Plaintiffs Sichel and Ross Cannot Prove That They Detrimentally Relied On Any Alleged Material Misrepresentation or Omission ................................................................................................ 39

        1.    Plaintiff Ross Has Failed To Adduce Evidence of Reasonable Detrimental Reliance ............................................................... 40

        2.    Plaintiff Sichel Has Failed To Adduce Evidence of Reasonable Detrimental Reliance. .............................................................. 43

    E.    The Court Should Grant Summary Judgment Of The BOFD Claims Of Plaintiffs Albright, Larsen, and Zebrowski Because They Either Could Not Or Would Not Participate In Discovery ........................................... 46

V.  CONCLUSION .................................................................................................. 47

## TABLE OF AUTHORITIES

**Page**

## CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)...........................................................................................8, 36

Auerbach v. Kantor-Curley Pediatric Associates,
No. Civ. A. 01-CV-854, 2004 WL 870702 (E.D. Pa. Mar. 22, 2004)..........................34

Balestracci v. NSTAR Electric & Gas Corp.,
449 F.3d 224 (1st Cir. 2006)..........................................................................44

Burstein v. Retirement Account Plan For Employees of Allegheny Health Education,
334 F.3d 365 (3d Cir. 2003)............................................................................9

Cagna v. Weirton Steel Corp. Ret. Plan
68 F. App'x 344 (3d Cir. 2003) ............................................................18, 19

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)..................................................................................7, 8

Charlton v. Paramus Board of Education,
25 F.3d 194 (3d Cir. 1994)...........................................................................8

Curtiss-Wright Corp. v. Schoonejongen,
514 U.S. 73 (1995)......................................................................................9

Daniels v. Thomas & Betts Corp.,
263 F.3d 66 (3d Cir. 2001)...........................................................................8

Diamore v. America Honda Motor Co.,
248 F. Supp. 2d 82 (D. Conn. 2002)...........................................................44

Edgar v. Avaya, Inc.,
503 F.3d 340 (3d Cir. 2007)..............................................................9, 43, 44

Frahm v. Equitable Life Assur. Society of U.S.,
137 F.3d 955 (7th Cir. 1998) ....................................................................9, 11

Hussey v. Chase Manhattan Bank,
418 F. Supp. 2d 702 (E.D. Pa. 2005) ...........................................................44

International Union, United  Automobile, Aerospace & Agriculture Implement Workers
    of America, U.A.W. v. Skinner Engine Co.,
188 F.3d 130 (3d Cir. 1999).........................................................................9

# TABLE OF AUTHORITIES
(continued)

**Page**

Jayne v. Archdiocese of Phila.,
Civ. A. No. 93-4039, 1994 WL 112212 (E.D. Pa. Mar. 25, 1994)...................................................3

Jordan v. Federal Express Corp.,
116 F.3d 1005 (3d Cir. 1997)..............................................................................................10, 22

Lawrence v. National Westminster Bank, New Jersey,
98 F.3d 61 (3d Cir. 1996) ...............................................................................................................8

Leuthner v. Blue Cross & Blue Shield of Ne. Pa.,
454 F.3d 120 (3d Cir. 2006)....................................................................................................22, 23

Martin v. Merrell Dow Pharma., Inc.,
851 F.2d 703 (3d Cir. 1988).......................................................................................................20

McCall v. Burlington N. Sante Fe Co.,
237 F.3d 506 (5th Cir. 2000) ....................................................................................................44

Panzino v. Scott Paper Co.,
685 F. Supp. 458 (D.N.J. 1988) .................................................................................................37

Schoch v. First Fidelity Bancorporation,
912 F.2d 654 (3d Cir. 1990)........................................................................................................8

Sprague v. General Motors Corp.,
133 F.3d 388 (6th Cir. 1998) ....................................................................................................11, 44

In re Unisys Corp. Retiree Medical Benefits ERISA Litigation ("Unisys (E.D. Pa.) I"),
837 F. Supp. 670 (E.D. Pa. 1993), aff'd, No. 94-1912, slip op (3d Cir. 1995) ...........................1, 6

In re Unisys Corp. Retiree Medical Benefits ERISA Litigation,
MDL No. 969, 1994 WL 284079 (E.D. Pa. June 23, 1994),
aff'd No. 94-1801 (3d Cir. June 28, 1995) ...............................................................................2, 10

In re Unisys Corp. Retiree Medical Benefits ERISA Litigation,
957 F. Supp. 628 (E.D Pa. 1997) .............................................................................................7, 42

In re: Unisys Corp. Retiree Medical Benefits ERISA Litigation ("Unisys III"),
242 F.3d 497 (3d Cir. 2001)................................................................................................ passim

In re: Unisys Corp. Retiree Medical Benefits ERISA Litigation,
No. 03-3924, 2006 WL 2822261 (E.D. Pa. Sept. 29, 2006)........................................................37

**TABLE OF AUTHORITIES**
(continued)

**Page**

In re: Unisys Corp. Retiree Medical Benefits ERISA Litigation,
No. 03-3924, 2007 WL 2071876 (E.D. Pa. July 16, 2007) .........................................................37

In re Unisys Corp. Retiree Medical Benefits ERISA Litigation ("Unisys IV"),
579 F.3d 220 (3d Cir. 2009)................................................................................................... passim

**STATUTES**

29 U.S.C. § 1104(a) ...............................................................................................................1, 8

**RULES**

Federal Rule of Civil Procedure 56 .................................................................................7

## I.   INTRODUCTION

Presently before the Court in this matter are the claims of 20 former employees of

Defendant Unisys Corporation ("Unisys" or the "Company").  Each brings a breach of fiduciary

duty ("BOFD") claim under section 404(a) of the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1104(a).  These 20 plaintiffs represent a subgroup of the plaintiffs in this

action (the "Group One Trial Plaintiffs"), whose claims have been severed for discovery and, if

necessary, trial purposes.  Like all of the plaintiffs in this action, they are individuals who retired

from Unisys between April 1, 1989 and November 1992 and participated in the Unisys Post

Retirement and Extended Disability Medical Plan ("Unisys PRM Plan").

The Group One Trial Plaintiffs claim that Unisys fiduciaries affirmatively misrepresented

to them that they would have vested retiree medical benefits and that the Company failed to

adequately disclose its right to change or terminate retiree medical benefits to them prior to their

retirements.  At the outset of this litigation, they also asserted claims based upon the express

terms of the Unisys PRM Plan and federal common law estoppel claims grounded in alleged

detrimental reliance.  On October 13, 1993, however, the Court granted summary judgment on

those claims, reasoning that "[t]he Unisys . . . summary plan descriptions contain uncontradicted

and unambiguous reservation of rights language."[1]  In re Unisys Corp. Retiree Med. Benefits

ERISA Litig., 837 F. Supp. 670, 681 (E.D. Pa. 1993) ("Unisys (E.D. Pa.) I"), aff'd, No. 94-1912,

slip op. at 9 (3d Cir. filed June 28, 1995) (attached hereto as Ex. 1).

In the long history of this case, there have been numerous rulings regarding other groups

of plaintiffs, many of which are unrelated to the Group One Trial Plaintiffs' claims.  In 1994,

---

[1]    In that same opinion, the Court also rejected the breach of fiduciary duty claims of the Unisys regular retirees, but those claims were later reinstated.  Id. at 680-81.

however, Judge Cahn conducted a bench trial on claims that are based on the exact same underlying facts as those at issue here.  See In re Unisys Corp. Retiree Med. Benefits ERISA Litig., MDL No. 969, 1994 WL 284079 (E.D. Pa. June 23, 1994) ("Unisys (E.D. Pa.) IV"), aff'd, No. 94-1801, slip op. at 11 (3d Cir. filed June 28, 1995) (attached hereto as Ex. 2).  The only difference between the class tried in that case and the current Aamodt plaintiffs is that the individuals in the class tried in 1994 (the "Unisys early retirees") retired from Unisys pursuant to a voluntary early retirement incentive program ("VERIP").  Like the current plaintiffs, however, the Unisys early retirees retired after April 1, 1989 and received retiree medical benefits pursuant to the terms of the Unisys PRM Plan.  In short, the Unisys early retirees and the Aamodt plaintiffs were working side by side at Unisys, received the exact same formal and informal documents regarding the Unisys PRM Plan, and retired from Unisys within the same corporate context.

Judge Cahn ruled in favor of Unisys on the Unisys early retirees' BOFD claims based upon several key findings applicable here.  First, he found that every individual eligible to participate in the Unisys PRM Plan had received a summary plan description ("SPD") with a clear and unambiguous reservation of rights clause advising them that Unisys could change or terminate the Unisys PRM Plan.  Id. at *33.  Second, he concluded that, unlike Unisys employees who received retiree medical benefits pursuant to a plan initially created by one of Unisys' predecessor companies, the Sperry and Burroughs corporations, there was no "campaign of confusion" related to the Unisys PRM Plan.  In particular, Judge Cahn found that unlike the Sperry post-retirement medical plan documents, neither the Unisys PRM SPD nor the informal written communications about the Unisys PRM Plan used the word "lifetime" to describe participants' retiree medical benefits.  Id.  Moreover, he found that the "[a]lthough the

plaintiffs point to the confusion about whether rates were 'frozen' at retirement or could be

changed, the SPD itself, as well as the VERIP offering documents, was clear on the point." Id.

On appeal, the Third circuit agreed in all respects.  Ex. 2 at 11.

The distinction drawn by Judge Cahn between the Unisys PRM Plan and the Burroughs

and Sperry plans remains crucial to the instant litigation and distinguishes this case from the

Adair et al. v. Unisys Corporation litigation regarding the Burroughs retiree medical plan that

was tried before Magistrate Judge Reuter in 2005.  In April 1989, Unisys replaced the Burroughs

and Sperry plans with the Unisys PRM Plan.  Whereas courts have found that there was evidence

of widespread confusion known by Unisys regarding the Sperry and Burroughs plans, and that

Unisys knew people were retiring before April 1, 1989 in large part to retire under the Burroughs

and Sperry plans rather than the Unisys PRM Plan, the Unisys PRM Plan presents an entirely

different set of facts which, as Judge Cahn found, belie any suggestion of reasonable and

widespread "confusion."  To the contrary, from the inception of the Unisys PRM Plan, including

in its announcement to employees in 1988 and 1989, Unisys routinely advised employees that

the plan was subject to change or termination at any time, and that retiree medical benefits rates

were not guaranteed even after retirement.

Having taken discovery on each of the Group One Trial Plaintiffs who were willing and

able to participate in the process, Unisys now moves for summary judgment against Group One

Trial Plaintiffs Marguerite Mahoney, Wallace George, Robert Barnes, Madeline King, Bernard

Zaber, Leonard Sichel, Leonard Portzline, Floyd Ross, George Albright, Robert Larsen, and

Stanley Zebrowski (hereafter the "Summary Judgment Plaintiffs").  The grounds for the motion

are:

- Against the backdrop of Unisys' repeated written
  statements regarding its right to change or terminate the

Unisys PRM Plan, Plaintiffs Mahoney, George, Barnes,
King, Zaber, and Portzline all cannot prove, as a matter of
law, that Unisys made material misrepresentations or
omissions to them.  Each admitted that they received a
Unisys PRM SPD prior to their retirement from Unisys that
explicitly informed them that the Company could change or
terminate the Unisys PRM Plan and that the costs of their
retiree medical coverage could not be guaranteed.

- Plaintiffs Sichel and Ross cannot, as a matter of law, prove
  that they relied to their detriment on any misunderstanding
  regarding Unisys' right to change or terminate their retiree
  medical benefits.  Mr. Sichel admitted in his deposition
  that, although he may have taken different action had he
  been certain Unisys **would** change the plan in the manner it
  did, he did not rely in any way upon a misunderstanding
  that Unisys did not have the inchoate right to do so.
  Although Mr. Ross now claims that he detrimentally relied
  by leaving Unisys when he did, he admitted that he was
  involuntarily terminated from Unisys when the division in
  which he worked was sold to another company.

- Plaintiff Sichel also signed a severance agreement stating
  that he would receive medical benefits under Unisys policy,
  which contained an integration clause indicating that no
  oral statements or documents would govern the terms of his
  departure from Unisys.  For this independent reason, he
  could not have reasonably relied upon any alleged oral
  statement made to him.

- Plaintiffs Albright, Larsen, and Zebrowski either would not
  or could not participate in discovery and no surviving
  spouse stepped forward to adjudicate their claims.

For these reasons, and the reasons set forth through this Memorandum of Law, Unisys

respectfully requests that the Court grant its Motion for Summary Judgment and dismiss with

prejudice the BOFD claims of the Summary Judgment Plaintiffs.

## II.    PROCEDURAL HISTORY

In September 1986, Sperry Corporation and Burroughs Corporation, two competing

computer manufacturers, merged to form Unisys Corporation.  Prior to the merger, both Sperry

and Burroughs provided their retiring employees with post-retirement medical coverage at little

4

or no cost to the retiree.  For a time after the merger, Unisys continued to provide the pre-merger

benefits under the separately established Sperry and Burroughs plans.  Beginning for those who

retired on or after April 1, 1989, Unisys started a separate Unisys PRM Plan for retirees.  That

plan completely replaced the preexisting Sperry and Burroughs plans, and had different terms

and costs that were less favorable than those prior plans.

On November 3, 1992, Unisys announced that, pursuant to its reserved right to change or

terminate retiree medical benefits, it was terminating the Burroughs, Sperry and Unisys plans,

and replacing them with a new consolidated plan effective January 1, 1993.  Under the new plan,

retirees were responsible for increasing levels of contribution until January 1, 1996, after which

time they were required to pay the full cost of their coverage.  The November 1992

announcement resulted in the present case.

The lengthy procedural history of this case is described in detail in past decisions,

including most recently in In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220

(3d Cir. 2009) ("Unisys IV").  Of particular importance here, however, is the late 1993 and early

1994 trial regarding the BOFD claims of a group known as the Unisys early retirees.  The Unisys

early retirees, like the Group One Trial Plaintiffs, retired from Unisys after April 1, 1989 and

received benefits under the Unisys PRM Plan until 1993.  The only difference between the

Unisys early retirees and the Aamodt plaintiffs (including the Group One Trial Plaintiffs) is that

the Unisys early retirees elected to participate in a VERIP.  The two groups otherwise worked in

the same locations and received benefits under the same Unisys PRM Plan.  Notably, any

Aamodt plaintiff eligible for a VERIP – including many of the Group One Trial Plaintiffs –

received the VERIP package that described the benefits that the Unisys early retirees accepted.

The VERIP claims were nevertheless tried separately from the claims of the Aamodt plaintiffs

because Plaintiffs argued that the Unisys early retirees had stronger claims due to having received a "special deal" under the VERIP that entitled them to vested retiree medical benefits. The Unisys' early retirees claimed that this "special deal" not only formed the basis of their bilateral contract claims, but they also presented allegations about that deal as part of the factual presentation that they made in support of their BOFD claims.

On June 23, 1994, the District Court entered judgment in favor of Unisys on the BOFD, plan-based and estoppel claims of the Unisys early retirees.  <u>See generally</u>, <u>Unisys (E.D. Pa.) IV</u>, 1994 WL 284079.  The Court held that the Unisys PRM SPD contained "unambiguous" language that "even after retirement . . . suggested that contribution rates might change" and "reserved Unisys' right to terminate the plan completely"  <u>Id.</u> at *29.  This decision was consistent with Judge Cahn's prior ruling wherein he dismissed the denial of benefits claims of the Unisys regular retirees – a group that included the <u>Aamodt</u> plaintiffs.  <u>See</u> <u>In re Unisys (E.D. Pa.) I</u>, 837 F. Supp. at 676-77 (holding that "Unisys has unambiguously reserved its unilateral right to terminate the plan" in the relevant plan documents and SPDs).[2]

In ruling on the BOFD claims of the Unisys early retirees, the District Court noted that the early retirees "would be covered by the same [Unisys PRM Plan] that he or she would have been as a regular retiree" such as the <u>Aamodt</u> plaintiffs.  <u>Unisys (E.D. Pa.) IV</u> at *30-31.  The Court held:

> The VERIP participants did not present any evidence similar to
> that of the Sperry plaintiffs of a systematic campaign of confusion.
> Additionally, the word 'lifetime' was not used in the Unisys SPD
> or the informal communications sent to the Unisys VERIP
> participants.

---

[2]   By contrast, the Court refused to dismiss the contract claims under the Sperry plans because the plan documents and SPDs contained references to "lifetime" benefits.  No such "lifetime" language existed in the Unisys PRM Plan.  <u>Unisys (E.D. Pa.) I</u>, 837 F.Supp. at 679.

Id. at *33.

The Third Circuit affirmed Judge Cahn's decision on the claims of the Unisys early retirees in all respects. The Third Circuit specifically agreed with Judge Cahn "that 'Unisys unambiguously reserved its right to increase contribution rates and/or terminate the medical plan.'" Ex. 2 at 11.

On August 13, 1996, based on the limited discovery undertaken with respect to those claims to that date, the District Court reinstated the BOFD claims of the Unisys regular retirees. In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 957 F. Supp. 628 (E.D Pa. 1997). The parties then commenced discovery regarding those claims, which are now limited to the claims asserted in the Aamodt and Abersold v. Unisys cases. As explained throughout this memorandum of law, the parties' discovery confirmed that Judge Cahn's findings with respect to the early retirees apply with equal force here, and, in the cases of the Summary Judgment Plaintiffs, that no issue of material fact exists and summary judgment should be granted.

### III.   STATEMENT OF UNDISPUTED FACTS

Unisys has separately filed a Statement of Undisputed Facts in Support of Its Motion for Summary Judgment, which it incorporates by reference herein.

### IV.   ARGUMENT

A.   **General Legal Framework**

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment against a party who fails to offer admissible evidence sufficient to establish the existence of every element essential to that party's case on which that party bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Although a defendant bears the initial responsibility of asserting the basis for its motion, the defendant is not required to negate the plaintiff's claim.

Rather, the defendant must only point out that there is an absence of evidence to support the plaintiff's case or, alternatively, offer affirmative evidence which demonstrates that the plaintiff cannot prove his or her case.  Lawrence v. Nat'l Westminster Bank, New Jersey, 98 F.3d 61, 69 (3d Cir. 1996).  After the defendant has met this initial burden, the plaintiff must present competent evidence designating "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (citation omitted).  The mere existence of an alleged factual dispute, if not material, will not defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  To survive a summary judgment motion, therefore, the non-moving party must come forward with specific admissible and credible evidence supporting each element essential to that party's case; mere conclusory allegations or denials are not enough.  Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).

Thus, the Summary Judgment Plaintiffs bear the burden of presenting evidence sufficient to establish the elements of their misrepresentation and inadequate disclosure claims under ERISA.  See, e.g., Daniels v. Thomas & Betts Corp., 263 F.3d 66, 75-76 (3d Cir. 2001) (distinguishing between misrepresentation and inadequate disclosure claims, and holding that plaintiff bears the burden of proving both).  Their affirmative misrepresentation claims require proof of: "(1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation."  Daniels, 263 F.3d at 73; In re: Unisys Corp. Retiree Med. Benefits ERISA Litig., 242 F.3d 497, 505 (3d Cir. 2001) ("Unisys III").  And their inadequate disclosure claims require proof that:  "(1) the company was acting in a fiduciary capacity; (2) the company . . . failed to adequately inform plan participants and

beneficiaries; (3) the company knew of the confusion generated by . . . its silence; and (4) there was resulting harm to employees." Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W. v. Skinner Engine Co., 188 F.3d 130, 148 n. 7 (3d Cir. 1999); see also Edgar v. Avaya, Inc., 503 F.3d 340, 350 (3d Cir. 2007).

The Third Circuit has held that proof of a misrepresentation or an inadequate disclosure and proof of materiality are best analyzed together. See Unisys IV, 579 F.3d at 228 ("The second element, a misrepresentation or inadequate disclosure, is best understood when viewed in conjunction with the third element, which requires that the misrepresentation or omission be material."). A statement or omission is material only if "there is a *substantial likelihood* that it would mislead a reasonable employee in making an adequately informed retirement decision." Id. at 229 (emphasis added). Whether or not a statement constitutes a material misrepresentation, "depends, of course, on the content of the message conveyed and the context in which it was conveyed." Unisys III, 242 F.3d at 509.

It is well established that ERISA embodies "a strong policy preference for the primacy of the written word over conflicting oral representations." Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ., 334 F.3d 365, 378 (3d Cir. 2003); see also Frahm v. Equitable Life Assur. Soc'y of U.S., 137 F.3d 955, 960 (7th Cir. 1998) (same). As the United States Supreme Court held in Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995), "ERISA . . . has an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time, a scheme that is built around reliance on the face of written plan documents." The primary means of communicating information about the terms of an ERISA plan is the SPD. Burstein, 334 F.3d at 379. "The SPD is *the document* to which the lay employee is likely to refer in obtaining information about the plan and in making decisions

9

affected by the terms of the plan." Id. (emphasis added).  Once the plan administrator satisfies

its disclosure duty under ERISA, the plan participants have a corresponding "duty to inform

themselves of the details provided in their plans . . . ." Jordan v. Fed. Express Corp., 116 F.3d

1005, 1016 (3d Cir. 1997).

For this reason, the Third Circuit has made it clear that, in this case, except in exceptional

circumstances not relevant to the Summary Judgment Plaintiffs' claims, the existence of written

SPDs, and the unambiguous reservation of rights ("ROR") clauses therein, are relevant to the

determination of whether or not Unisys committed a breach of fiduciary duty (under either an

"affirmative misrepresentation" or "inadequate disclosure" theory).  This Court held:

> A judgment remains to be made as to whether a reasonable fiduciary in Unisys'
> position would have foreseen that its conduct towards the various plaintiffs would
> result in important decision making on their part based on a mistaken belief that
> they possessed guaranteed lifetime benefits.  In situations involving actual
> knowledge on the part of Unisys that an employee was about to rely on such a
> misunderstanding, we agree with the District Court that the existence of the SPD
> is irrelevant. ***In other situations, however, the fact that Unisys had distributed***
> ***what purported to be an authoritative guide to benefits is one of the***
> ***circumstances that must be considered in passing this judgment on its conduct.***

Unisys III, 242 F.3d at 509 (emphasis supplied).

Here, the very SPD that must be considered by the Court contains a reservation of rights

clause that Judge Cahn has already held is "unambiguous" and clearly advised employees that

"even after retirement . . . contribution rates might change" and that "reserved Unisys' right to

terminate the plan completely" Unisys (E.D. Pa.) IV, 1994 WL 284079 at *29.  Moreover, in

assessing the BOFD claims here, the Court should consider more than just the Unisys PRM SPD

that was alone sufficient to defeat Plaintiffs' estoppel and plan-based claims.  It should also

consider the litany of written communications emphasizing the Company's right to change or

terminate the Unisys PRM Plan and all of the other new Unisys welfare plans, which began even

before the Unisys PRM Plan was implemented and continued through the retirement of each

Plaintiff.  Against this backdrop, the Summary Judgment Plaintiffs who admitted receipt of the

Unisys PRM SPD (and, in many cases, other documents) explicitly spelling out the Company's

rights cannot, as a matter of law, prove their BOFD claims.

Indeed, although the Third Circuit has found that it is possible to bring a BOFD claim

even where an SPD accurately explains the information allegedly misrepresented or omitted by a

fiduciary, courts must do so only in the narrowest circumstances.  As the Sixth Circuit has noted:

> Explanations of benefits 'tend to sound promissory by their very
> nature. While these explanations may state a company's current
> intentions with respect to the plan, they cannot be expected to
> foreclose the possibility that changing financial conditions will
> require a company to modify welfare benefit plan provisions at
> some point in the future.'

Sprague v. Gen. Motors Corp., 133 F.3d 388, 405 (6th Cir. 1998) (en banc).  These problems can

be compounded when, as here, the testimony received is based upon alleged conversations that

occurred more than 17 years ago.  As the Seventh Circuit has warned:

> Havoc would ensue if plans meant different things for different
> participants, depending on what someone said to them years
> earlier.  Memory is weak compared to the written word, and there
> is a substantial risk that participants will not recall what was said,
> will exaggerate (in their favor) what they heard, or will simply
> prevaricate in order to improve their position.

Frahm, 137 F.3d at 960.

**B.  Summary Judgment Plaintiffs Mahoney, George, Barnes, King, Zaber And Portzline Cannot Establish An Affirmative Misrepresentation Or An Inadequate Disclosure**

       **1.  Unisys Clearly Conveyed Its Right To Change Or Terminate The Unisys PRM Plan**

The Group One Trial Plaintiffs as a whole have a unique set of claims that have not been

before this Court since the 1994 trial of the Unisys early retirees.  Unlike the Burroughs and

Sperry regular retirees, their retiree medical benefits were provided under a post-merger Unisys

plan that was not implemented until April 1, 1989. The Summary Judgment Plaintiffs, therefore, had no basis to believe that any prior understanding they may have had about the Burroughs or Sperry retiree medical plans would apply to the new Unisys PRM Plan, and the written descriptions of the Unisys PRM Plan explicitly made clear that that was not the case.

In fact, Unisys employees who remained with the Company after the merger had experienced a sea change in their benefits package. Over a period of two years, Unisys replaced all of the Sperry and Burroughs welfare benefit plans with its own plans. Statement of Undisputed Facts ("S.O.U.F.") ¶ 2. Retiree medical benefits were among the last of the Summary Judgment Plaintiffs' benefits programs to be placed under a Unisys-based plan after Burroughs and Sperry merged in September 1986. S.O.U.F. ¶¶ 1-2, 15. Thus, the only relevant context that the Summary Judgment Plaintiffs had when they learned that the Unisys PRM Plan would be created was their experience with the Unisys active employee benefit plans that had been rolled out to replace the Sperry and Burroughs plans. That context reinforced that Unisys reserved the right to change or terminate its benefit programs.

Specifically, beginning in 1987, the Company began a communications campaign advising employees that the welfare benefits they had received as employees of Sperry and Burroughs would be replaced by new Unisys benefits that were different than their prior benefits. See S.O.U.F. ¶¶ 2-7. Throughout that campaign, Unisys made it clear to employees that *all* welfare benefits provided by the Company, including retiree medical benefits, were subject to change or termination at any time. In fact, the Company sent all employees a Flexible Benefits SPD, which provided SPDs for the Unisys Flexible Benefit Plan generally, as well as the Unisys Medical Plan, Unisys Dental Plan, Reimbursement Accounts, Unisys Short Term Disability Plan, Unisys Long Term Disability Plan, Company Provided Life Insurance, Seatbelt Insurance and

12

Business Travel Accident Insurance.  Each section of the Flexible Benefits SPD contained an independent ROR that unambiguously advised employees that the Company could change or terminate the benefits described therein.  S.O.U.F. ¶¶ 7-12.   Of significance, the Unisys Medical Plan SPD that described the medical benefits Unisys provided its active employees beginning in April 1988 contained an unambiguous reservation of rights clause.  Unisys (E.D. Pa.) IV, 1994 WL 284079, at *32.

Moreover, in announcing the new Unisys Medical Plan in 1987 and 1988, Unisys described the rapidly escalating medical costs facing it, and advised employees that the plan would include "cost management features" that were not parts of the Sperry or Burroughs plans. S.O.U.F. ¶¶ 4, 9.   Thereafter, the Company exercised its right to change the Unisys Medical Plan and the medical benefits it provided to its employees.  S.O.U.F. ¶¶ 13-14, 36-39.  For example, effective January 1, 1990, the Company, for the first time, required employees to contribute to the cost of their own medical and dental benefits and reduced the subsidy it provided for employees who participated in HMO programs.  S.O.U.F. ¶ 9.   In the communications announcing these significant changes, the Company explained that, in response to "[t]he problem of increasing health costs," they were part of the Company's "continuing efforts to control the costs of the Unisys Medical Plan."  S.O.U.F. ¶ 13.

As early as the spring of 1988, Unisys also began advising employees in writing that effective 1989, anyone who retired would receive retiree medical benefits under the new Unisys PRM Plan rather than the Sperry and Burroughs plans.  S.O.U.F. ¶¶ 15-16.   As Judge Cahn ruled, "[t]he Unisys Plan was clearly a less generous plan than its predecessors."  Unisys (E.D. Pa.) IV, 1994 WL 284079, at *29.  Ultimately, the date for the implementation of the Unisys PRM Plan was pushed back to April 1, 1989.  In February 1989, Unisys sent all eligible

employees a letter reminding them that anyone who retired after April 1, 1989 would receive

retiree medical benefits only under the new Unisys PRM Plan.  S.O.U.F. ¶ 15.   That letter, sent

by J.A. Blaine to all employees eligible to retire and receive retiree medical benefits, advised

employees that the "design features" of the Unisys PRM Plan were the same as those in place for

the Unisys Medical Plan (which included the unambiguous reservation of rights).  S.O.U.F. ¶¶

16, 18-19.

The February 1989 Blaine letter also included the Unisys PRM Plan SPD as an

attachment.  That SPD incorporated by reference the Unisys Medical Plan SPD, which, as noted

above, contained a clear and unambiguous reservation of rights clause.  In any event, the Unisys

PRM Plan SPD itself made it clear that Unisys could change or terminate retiree medical benefits

at any time.  S.O.U.F. ¶¶ 21-22.  It not only had the unambiguous reservation of rights language,

but it also explicitly noted that, although Unisys would attempt to maintain retiree contributions

at the rates set in the year in which a retiree began participation, "this cannot be guaranteed,

given the unpredictable conditions which continue to influence post-retirement medical

coverage, such as rising medical costs and legislative actions."  Id.

Even after February 1989, Unisys continued to advise employees and retirees of its right

to change or terminate the Unisys PRM Plan.  In both September 1989 and June 1991, Unisys

provided eligible employees with VERIP packets that, in part, described the benefits available to

employees under the Unisys PRM Plan.  S.O.U.F. ¶¶ 24-28.  As Judge Cahn has previously held,

the September 1989 packet "specifically alerted the VERIP participants, in the VERIP offering

document, that the contribution rates were not guaranteed."  Unisys (E.D. Pa.) IV at *30.  The

September 1989 packet states:

> Unisys will attempt to maintain your contributions at the levels in
> effect during the year in which your participation begins.

> *However, this cannot be guaranteed, given the unpredictable conditions that continue to influence post-retirement medical coverage, such as rising medical costs and legislative actions.*

See S.O.U.F. ¶21 (emphasis supplied).  Judge Cahn also held that the June 1991 "offering document was even more explicit in its statement that the benefits were not guaranteed"  Id. at *31.  Moreover, although some eligible Group One Trial Plaintiffs have self-servingly claimed they did not receive these documents or do not recall receiving them, Judge Cahn has already held that in both September 1989 and June 1991, "Unisys sent eligible employees a packet of information to help them make their decisions."  Unisys (E.D. Pa.) IV, 1994 WL 284079, at *30-31.

Moreover, when communicating about a forthcoming change to the retiree medical benefit plan with individuals who had left the Company but deferred participation in the Unisys PRM Plan, Unisys again explicitly reminded them that the Company could change the contribution rates at any time in the future.  S.O.U.F. ¶¶ 31-35.  Unisys also exercised its right to change the Unisys PRM Plan annually after its implementation in April 1989, including changes increasing retirees' copayments for preferred and nonpreferred care, as well as increasing the retirees' costs for mail order prescription drugs.  S.O.U.F. ¶¶ 36-39.

Against this backdrop, there was simply no way that Unisys, or any reasonable fiduciary in Unisys' position, could foresee that any employee might wrongly believe that they were entitled to vested retiree medical benefits.  Thus, no reasonable fiduciary would have believed that there was a "substantial likelihood" that any employee would ignore the rollout of the Unisys benefits generally, the numerous RORs in the Flexible Benefits SPD, the rollout of the Unisys PRM Plan itself, the ROR in the Unisys PRM Plan SPD, the subsequent communications of Unisys' right to change or terminate the Unisys PRM and the actual changes made to the

Unisys PRM annually, and mistake accurate descriptions of the then-existing terms of the Unisys

PRM Plan as promises of vested benefits.

> 2. **Viewed In The Context Of This Case, The Truthful Statements Made To Plaintiffs Who Have Admitted Possession Of The Unisys PRM SPD Cannot, As A Matter of Law, Constitute Material Misrepresentations And/Or Omissions**

Although both Judge Cahn and the Third Circuit have already held that ***all*** employees

received the Unisys PRM SPD,[3] Unisys is conservatively moving for summary judgment only

against those Group One Trial Plaintiffs who admitted receiving the 1989 Blaine letter and

attached Unisys PRM SPD.  These are Plaintiffs Mahoney, George, Barnes, King, Zaber, and

Portzline.  Given the context in which the Unisys PRM Plan was announced and their receipt of

the governing plan document that advised them of Unisys' right to change or terminate retiree

medical benefits under the Unisys PRM Plan, a fiduciary's accurate statements of the then

existing cost structure of the plan to these Plaintiffs cannot constitute an affirmative

misrepresentation or an omission.  Moreover, in the context of Unisys' repeated emphasis that it

could change or terminate all of its new welfare benefit plans, its prior and subsequent

communications reiterating that it could terminate the Unisys PRM Plan, and having just

implemented the Plan in place of the more favorable Burroughs and Sperry PRM plans, even if

such accurate statements were actionable, there was not a "substantial likelihood" that anyone at

Unisys after April 1, 1989 who possessed the governing SPD would rely on the statements to

their detriment based upon a misunderstanding about Unisys' right to change or terminate the

benefits.

---

[3]     In re Unisys Corp. Retiree Med. Ben. ERISA Litig., 957 F. Supp. at 635 ("The reservation of rights clause, published in the summary plan description ("SPD") ***which all participants received***"); Unisys III, 242 F.3d at 503 ("To the contrary, pursuant to the relevant provisions of ERISA, Unisys regularly distributed to its employee and retirees SPDs").

In fact, Judge Cahn's decision ruling in Unisys' favor on the BOFD claims of the Unisys early retirees requires that summary judgment be granted here.  It would be a contradiction if the Unisys early retirees, who Plaintiffs asserted had a "special deal" that the Summary Judgment Plaintiffs did not have, could not prove their BOFD claims, but somehow the Summary Judgment Plaintiffs could prove theirs.  In fact, the Unisys early retirees' claims failed because any alleged confusion they had about retiree medical benefits was unreasonable in light of the reservation of rights language in the VERIP offerings that they possessed.  Similarly, the Summary Judgment Plaintiffs cannot prove their BOFD claims because that same reservation of rights language appears in the Unisys PRM SPD they possessed.  What's more, many of the Summary Judgment Plaintiffs also received the very same VERIP offerings that rendered the Unisys early retirees' BOFD claims unsuccessful.

> a. **Plaintiffs Frank and Marguerite Mahoney Have Failed To Adduce Evidence Of Any Material Misrepresentation Or Omission**

Mr. Mahoney began working for Sperry in 1961, and with one brief interruption to take a position with another company, he continued to work for Sperry through the merger of Burroughs and Sperry to form Unisys in 1986.  See S.O.U.F. ¶ 40.  Mr. Mahoney's employment with Unisys ended in 1991, allegedly as the result of a voluntary layoff pursuant to a reduction in force program implemented by Unisys.  See S.O.U.F. ¶¶ 41, 49.  On October 6, 2004, Mr. Mahoney passed away.  See S.O.U.F. ¶ 42.  He is survived by his spouse, Marguerite Mahoney, who has continued as a Plaintiff in this action.  See S.O.U.F. ¶ 43.

The undisputed evidence establishes that Mr. Mahoney received the February 1989 letter from J.A. Blaine and its attachments, including the Unisys PRM SPD, which contained clear and unambiguous reservation of rights language.  See S.O.U.F. ¶ 48.  Ms. Mahoney has admitted that she does not know what other documents her husband received from Unisys, and therefore

17

cannot dispute that her husband received the various documents that the undisputed facts

establish were sent to other Unisys employees in his circumstances.  See S.O.U.F. ¶ 48.  These

documents include the Unisys Flexible Benefits SPD, which contained numerous ROR clauses,

and the 1990 Workforce Reduction packet, which explicitly provided that post-retirement

medical benefits for those employees who took voluntary layoffs would be provided pursuant to

the Unisys PRM Plan.  See S.O.U.F. ¶¶ 48-49.

Ms. Mahoney now claims that, despite his receipt of the Unisys PRM SPD, her husband

was unable to make an informed retirement decision because of alleged misrepresentations

and/or omissions made to her husband by Human Resources Representative Mike Oglinski.  See

S.O.U.F. ¶ 46.  Yet Mr. Mahoney's responses to Unisys' 1999 discovery requests state only that,

during a meeting prior to Mr. Mahoney's separation from Unisys, Mr. Oglinski told Mr.

Mahoney the cost structure of the Unisys PRM plan, including the cost of benefits for himself

and his wife before and after age 65.  See S.O.U.F. ¶ 44.  Mr. Mahoney's discovery responses

made no reference to any guarantee or promise of lifetime benefits made by Mr. Oglinski.  See

id.

Unisys anticipates Ms. Mahoney will argue that Mr. Oglinski actually told her husband

that the cost structure he presented to Mr. Mahoney was "for life."  This argument, however, is

based solely on Ms. Mahoney's testimony at her deposition that, after his conversation with Mr.

Oglinski, her husband told her that Mr. Oglinski used the words "for life."  See S.O.U.F. ¶ 46.

Ms. Mahoney's testimony regarding the alleged statements made to her by her husband is

inadmissible hearsay, and the Court should therefore disregard these alleged statements.  In

Cagna v. Weirton Steel Corp. Ret. Plan, the Third Circuit held that a surviving spouse's

testimony regarding statements allegedly made to her by her husband about his choice of pension

options was inadmissible hearsay that could not create a genuine issue of fact to defeat summary

judgment.  68 F. App'x 344, 347 n. 1 (3d Cir. 2003).  Based on this holding, the Third Circuit

affirmed the District Court's grant of summary judgment on the surviving spouse's ERISA

BOFD claim.  Id. at 347.  Ms. Mahoney's testimony about statements made to her by her

husband is indistinguishable from the testimony offered by the surviving spouse in Cagna, and is

therefore hearsay inadmissible to prove that these alleged statements were actually made by Mr.

Oglinski.

### b.      Plaintiff Wallace George Has Failed To Adduce Evidence Of Any Material Misrepresentation Or Omission

Mr. George began working for Burroughs in 1952 and continued to work for

Burroughs through the merger of Sperry and Burroughs to form Unisys in 1986.  See S.O.U.F. ¶

50.  Mr. George's employment with Unisys ended in December of 1989, allegedly as the result

of a voluntary layoff pursuant to a reduction in force program implemented by Unisys.  See

S.O.U.F. ¶ 51.

At his deposition, not only did Mr. George admit to receiving several documents from

Unisys that contained clear and unambiguous reservations of rights language, he admitted that he

read those documents prior to his retirement, and that he understood that Unisys reserved the

right to change or terminate the Unisys PRM plan *at the time he read the documents*.  See

S.O.U.F. ¶¶ 55-60.  After admitting that he received and read the February 1989 letter from J.A.

Blaine and the Unisys PRM SPD attached thereto, Mr. George admitted that he understood the

reservation of rights language contained in that document:

> Q.      If you look at . . . page 3 of [the Unisys PRM SPD], the last
> paragraph, it's labeled "Plan Termination/Revision."  It says, "As with
> other benefit programs, the company reserves the right to change or
> terminate the Unisys Post-Retirement and Extended Disability Medical
> Plan.  Should the plan be terminated, coverage for all participants would
> end."

A.    Yes.

Q.    Did you read that provision whenever you received this document?

A.    Yes.

Q.    As a result of reading that provision, ***did you understand that Unisys could terminate or change the terms of the Unisys Post-Retirement and Extended Disability Medical Plan?***

A.    ***Yes.***

See S.O.U.F. ¶¶ 55-57 (emphasis added).[4]

Similarly, Mr. George admitted that, prior to the end of his employment with Unisys, he received and read the packet describing the September 1989 VERIP which was sent to all employees eligible to participate in that program.  See S.O.U.F. ¶ 60.  This packet also contained reservation of rights language, and Mr. George once again admitted that he read this language and understood its implications:

> Q.    Okay.  If you'll look at the highlighted provision on page 34, it says, "Note: Unisys will attempt to maintain your contributions at the levels in effect during the year in which your participation begins.  However, this cannot be guaranteed, given the unpredictable conditions that continue to influence post-retirement medical coverage, such as rising medical costs and legislative action."
>
> Do you see that?
>
> A.    Yes, I see it.
>
> Q.    Did you read that when you received this document?
>
> A.    Yes.
>
> Q.    And did you understand that Unisys was unable to guarantee that contribution levels would remain the same?

---

[4]    After giving this testimony under direct examination at his deposition, Mr. George delivered flatly contradictory testimony under examination by his own attorney, claiming that he had not read and understood the February 1989 letter from J.A. Blaine.  See S.O.U.F. ¶59.  This flatly contradictory testimony, offered without any explanation or claim of confusion during his earlier testimony, should be disregarded by the Court.  See Martin v. Merrell Dow Pharma., Inc., 851 F.2d 703, 705 (3d Cir. 1988) (affirming District Court's holding that affidavit submitted by plaintiff which flatly contradicted her earlier deposition testimony, without explanation, could not create an issue of material fact to defeat summary judgment).

A.      Yes.

<u>See</u> S.O.U.F. ¶ 60.[5]

Despite admitting that he read and understood the reservation of rights language in these documents, Mr. George now claims he was misled by the statements of a Human Resources Representative, Sandy Wolownik, into believing that his retirement medical benefits were guaranteed and could not change.  Mr. George claims that he met with Ms. Wolownik in October of 1989, and that she told him that he would have retirement medical benefits for life and that the cost of those benefits would not change.  <u>See</u> S.O.U.F. ¶ 66.  Yet Mr. George admits that he never asked Ms. Wolownik or anyone else if Unisys had the right to terminate the Unisys PRM Plan.  <u>See</u> S.O.U.F. ¶ 65.

### c.      **Plaintiff Robert Barnes Has Failed To Adduce Evidence Of Any Material Misrepresentation Or Omission**

Mr. Barnes began working for Burroughs in December of 1955 and continued working at Burroughs through the merger of Burroughs and Sperry to form Unisys in 1986.  <u>See</u> S.O.U.F. ¶ 67.  Mr. Barnes' employment with Unisys ended in February of 1990.  <u>See</u> S.O.U.F. ¶ 69.

During his deposition, Mr. Barnes admitted he understood that, after the merger of Burroughs and Sperry, Unisys started a new benefits program for its employees that was distinct from the old Burroughs and Sperry plans.  <u>See</u> S.O.U.F. ¶ 68.  This "made all the sense in the world" to Mr. Barnes.  <u>See id.</u>  Mr. Barnes knew that the new benefits program included a new plan for retiree medical benefits.  <u>See id.</u>

Mr. Barnes also admitted that he regularly received communications from Unisys regarding his benefits, including an annual package sent to his home every year.  <u>See</u> S.O.U.F. ¶

---

[5]      Unlike his testimony regarding the February 1989 letter from J.A. Blaine, Mr. George never contradicted his testimony that he read and understood the reservation of rights language in the packet describing the September 1989 VERIP.

70. Mr. Barnes testified, however, that he seldom read any of these documents, because he "was satisfied that the company was going to provide [him] with what benefits were available" and he "wasn't particularly concerned with the details."  <u>See</u> S.O.U.F. ¶ 71.

If Mr. Barnes had chosen to read the documents that were sent to him by Unisys, he would have seen the clear and unambiguous reservation of rights language contained in at least two documents that he admits he received.  <u>See</u> S.O.U.F. ¶¶ 73, 76.  Indeed, Mr. Barnes produced to Unisys copies of the Unisys PRM SPD attached to the February 1989 letter from J.A. Blaine and the packet of information about the late 1989 VERIP, both of which contained clear and unambiguous reservation of rights language.  <u>See</u> <u>id.</u>

Mr. Barnes now claims that he did not read the February 1989 letter from J.A. Blaine when he received it; however, plan participants have a "duty to inform themselves of the details provided in their plans."  <u>Jordan</u>, 116 F.3d at 1016.  In denying the Unisys early retirees' BOFD claims, Judge Cahn found "no basis for the witnesses' understanding that their benefits were vested" where witnesses "admitted that [they] had not read the passage . . . where Unisys noted that contribution rates were not guaranteed."  <u>Unisys (E.D. Pa.) IV</u>, 1994 WL 284079, at *31. For this same reason, Mr. Barnes' claims cannot survive based on his own failure to read the plan documents he had in his possession.  In any event, Mr. Barnes' claim that he did not read the document makes no sense, since he admitted that he discussed that document with Human Resources Representative Angelo Bellace in a meeting about retirement.  <u>See</u> S.O.U.F. ¶ 80.

The Unisys PRM SPD was not the only document Mr. Barnes received that advised him that Unisys could change his retiree medical contribution rates after he retired or terminate the Unisys PRM Plan altogether.  He admitted that he received the packet describing the September 1989 Unisys VERIP that contained clear and unambiguous reservation of rights language that

precluded the Unisys early retirees from successfully asserting BOFD claims.  See S.O.U.F. ¶ 73.

In any event, Mr. Barnes admits that Mr. Bellace did not tell him that the reservation of rights language in Unisys PRM SPD did not apply to him.  See S.O.U.F. ¶ 80.  He further admits that he never discussed the possibility of plan termination with Mr. Bellace.  See id.  Mr. Barnes claimed in his deposition, however, that in the same meeting where the February 1989 letter was discussed, Mr. Bellace told him he would have retirement medical benefits "for life."  See S.O.U.F. ¶ 81.   This testimony was contradicted by Mr. Barnes' sworn 1999 interrogatory responses, which he verified after reviewing his answers to ensure they were truthful, accurate and complete.  See S.O.U.F. ¶ 82.  There, he alleged only that he and Mr. Bellace discussed that "the company would provide retiree medical benefits at a reasonable cost" and did not allege that Mr. Bellace told him he would have benefits "for life."  See id.

Even if it were true that Mr. Bellace made the "for life" statement to Mr. Barnes, it would not have been sufficient to mislead a reasonable employee into making an uninformed decision about retirement.  A reasonable employee, having been given the document that he was told would govern his retirement medical benefits, would have read that document before discussing it with Mr. Bellace.  If Mr. Barnes had read the Unisys PRM SPD instead of simply being "satisfied that the company was going to provide [him] with what benefits were available[,]" he would have been able to discuss the reservation of rights language with Mr. Bellace and then make a fully informed retirement decision.  Unisys cannot be held responsible for Mr. Barnes' failure to read this document and the many other documents about benefits that Mr. Barnes admits he ignored.

Moreover, Mr. Bellace's alleged failure to tell Mr. Barnes that the PRM could change or be terminated cannot be considered a material omission when Mr. Barnes discussed the February 1989 Blaine letter with Mr. Bellace, but never mentioned that he hadn't actually read it.  Mr. Barnes admits that he did not ask Mr. Bellace any questions about the potential for changes to the Unisys PRM Plan, presumably because he hadn't read the reservation of rights clauses contained in the documents that were provided to him.  Nothing in Mr. Barnes conduct put Mr. Bellace on notice that Mr. Barnes had not read the clear and unambiguous reservation of rights language contained in the PRM SPD, and Mr. Bellace therefore cannot be held responsible for failing to reiterate that reservation of rights to Mr. Barnes verbally.  Mr. Barnes cannot establish that Unisys or its agents made material misrepresentations and/or omissions to him, and his BOFD claim fails as a result.

### d.   Plaintiff Madeline King Has Failed To Adduce Evidence Of Any Material Misrepresentation Or Omission

Ms. King began working for Sperry in July of 1978 and continued working at Sperry through the merger of Sperry and Burroughs to form Unisys in 1986.  See S.O.U.F. ¶ 83.  Ms. King's employment with Unisys ended in November of 1989.  See S.O.U.F. ¶ 84.

At her deposition, Ms. King admitted that, throughout her employment, she received communications from Unisys regarding her benefits, including summary plan descriptions.  See S.O.U.F. ¶¶ 85-86.  Ms. King also admits that she received the February 1989 letter from J.A. Blaine and the attachments thereto, including the Unisys PRM SPD.  See S.O.U.F. ¶ 87.  After reading the Unisys PRM SPD during her deposition, Ms. King admitted that the reservation of rights language contained therein was very clear.  See id.  Ms. King testified that she "guessed" she read the Unisys PRM SPD while she was still an employee at Unisys, but that she does not remember discussing it with anyone at Unisys.  See S.O.U.F. ¶ 88.  In any event, as noted above,

Judge Cahn has already held that a plaintiff's unreasonable failure to read operative plan documents does not give rise to a BOFD claim based upon alleged "confusion" that would have been corrected had the plan participant met his or her obligation to inform himself or herself about the terms of the plan. Unisys (E.D. Pa.) IV, 1994 WL 284079, at *31.

Ms. King also admits signing a COBRA form which contained reservation of rights language on the back, and she testified that she must have read the back of the form where it indicated that Unisys could discontinue its group health plans. See S.O.U.F. ¶ 90. Finally, Ms. King admitted receiving the 1989 Workforce Reduction packet, which explicitly provided that post-retirement medical benefits for employees that took voluntary layoffs from Unisys like Ms. King would be provided pursuant to the new Unisys PRM Plan. See S.O.U.F. ¶ 89.

In the face of the reservation of rights language that Ms. King admits she received and admits was clear, Ms. King still claims she was misled into making an uninformed decision about retirement. Ms. King claims that, after a conversation with a manager in her department, Richard McCarthy, she came away with the perception that she would have medical benefits for life. See S.O.U.F. ¶ 93. Ms. King admits that she does not know if Mr. McCarthy used those words. See id. In fact, in her sworn 1999 interrogatory responses, which she verified after reviewing her answers to ensure they were truthful, accurate and complete, Ms. King said only that Mr. McCarthy told her, "[y]ou would not find this coverage anywhere, at the affordable rate Unisys was offering." See S.O.U.F. ¶ 94. When pressed on this point, Ms. King persisted in her claim that she left Unisys with an understanding that her retirement medical benefits could not change, but when asked for the basis of this belief, Ms. King testified "I have no idea." See S.O.U.F. ¶ 96.

Ms. King's admittedly baseless belief that her retirement medical benefits could not change cannot form the basis of a BOFD claim. Nor can the vague statements she attributes to Mr. McCarthy, which she claims left her with a perception that she had retirement medical benefits for life. No reasonable employee in Ms. King's situation would have been misled into making an uninformed retirement decision by these factors after having read the reservation of rights language in the Unisys PRM SPD – language Ms. King herself admits was "very clear."

Moreover, Ms. King cannot claim that the alleged failure of Mr. McCarthy to warn her that the Unisys PRM Plan could change was a material omission when Ms. King had been provided with precisely that information in the form of the Unisys PRM SPD attached to the February 1989 letter from J.A. Blaine. Put simply, any misunderstanding about retirement medical benefits on the part of Ms. King was caused, not by misrepresentations and/or omissions by Unisys and its agents, but by Ms. King's own unreasonable failure to appreciate the clear information she was given, and her BOFD claim fails as a result.

e.   **Plaintiff Bernard Zaber Has Failed To Adduce Evidence Of Any Material Misrepresentation Or Omission**

Mr. Zaber began working for Burroughs in August of 1955 and continued working at Burroughs through the merger of Burroughs and Sperry to form Unisys in 1986. See S.O.U.F. ¶ 97. Mr. Zaber's employment with Unisys ended in November of 1990. See S.O.U.F. ¶ 98.

At his deposition, Mr. Zaber admitted that, while still a Unisys employee, he received and read the February 1989 letter from J.A. Blaine and the attachments thereto, including the Unisys PRM SPD. See S.O.U.F. ¶ 108 Further, Mr. Zaber admitted that he read and understood the clear and unambiguous reservation of rights language contained in the Unisys PRM SPD, and understood that Unisys could not guarantee that the required contribution levels for his retirement medical benefits would not increase. See S.O.U.F. ¶¶ 109-110.

26

Mr. Zaber also admits he received the packet describing the September 1989 Unisys VERIP that contained clear and unambiguous reservation of rights language that precluded the Unisys early retirees from successfully asserting BOFD claims.  See S.O.U.F. ¶ 111.  Not only does Mr. Zaber admit that he read and understood the reservation of rights language contained in this document, he admits that he circled that language on his copy of the packet.  See id.

Despite these admissions, Mr. Zaber claims he was misled into making an uninformed decision about retirement during a discussion with Human Resources Representative Leslie Avery.  See S.O.U.F. ¶ 102.  Mr. Zaber claims that he asked Ms. Avery if his retirement benefits would be locked in when he retired, and that Ms. Avery responded affirmatively.  See id.  Mr. Zaber admits, however, that Ms. Avery provided the caveat that Unisys had the right to levy a blanket increase in contribution levels on all retirees.  See id.  Mr. Zaber made a note of this caveat on his copy of the packet describing the September 1989 VERIP.  See id.  Mr. Zaber admits that he does not recall if he asked Ms. Avery if Unisys had the right to terminate the Unisys PRM Plan.  See S.O.U.F. ¶ 103.

The statements made to Mr. Zaber by Ms. Avery would not have misled a reasonable employee into making an uninformed decision about retirement.  Prior to his meeting with Ms. Avery, Mr. Zaber had at least twice received documents that he read and understood that clearly explained that Unisys reserved the right to change or terminate the Unisys PRM Plan.  The statements Mr. Zaber attributes to Ms. Avery did not contradict that understanding.  Mr. Zaber admits that he never asked Ms. Avery if his retirement medical benefits could change.  A reasonable employee, having read and understood the reservation of rights language in the Unisys PRM SPD and elsewhere, would at least have asked Ms. Avery to specifically discuss the effects of that language, instead of simply asking if benefits were "locked in."

In any event, the caveat delivered to Mr. Zaber by Ms. Avery – that Unisys reserved the right to levy a blanket increase on all retirees' contributions – allowed Mr. Zaber to make an informed decision about retirement.  Mr. Zaber does not allege that Ms. Avery told him that contribution levels could rise only modestly or slowly.  He simply alleges that she told him that any increase would be levied on all retirees, and not just a particular subset.  This is precisely what Unisys did:  the Company raised the contribution level required of all retirees, eventually to the point where Unisys was no longer subsidizing their retirement medical benefits at all.  Mr. Zaber may not have foreseen such a drastic increase in his contribution levels when he decided to end his employment with Unisys, but at the time of his decision, Unisys did not expect such an increase either.   From reading the Unisys PRM SPD and the packet describing the September 1989 VERIP, however, Mr. Zaber knew that Unisys had reserved the right to make such increases, up to and including plan termination, and the statements he attributes to Ms. Avery would not have misled a reasonable employee in his position into making an uninformed decision about retirement.  Indeed, the documents provided to Mr. Zaber and the caveat about blanket increases he admits he was given by Ms. Avery allowed Mr. Zaber to make an informed retirement decision, and his BOFD claim fails as a result.

> f.   **Plaintiff Leonard Portzline Has Failed To Adduce Evidence Of Any Material Misrepresentation**

Mr. Portzline began working for Burroughs in February of 1955 and continued working at Burroughs through the merger of Burroughs and Sperry to form Unisys in 1986.  <u>See</u> S.O.U.F. ¶ 114.  Mr. Portzline's employment with Unisys ended on July 23, 1991, when he took a voluntary layoff pursuant to a reduction in force program undertaken by Unisys.  <u>See</u> S.O.U.F. ¶¶ 116, 124.

During his deposition, Mr. Portzline admitted he understood that, after the merger of Burroughs and Sperry, Unisys started new Unisys benefits plans for its employees, including a new plan for post-retirement medical benefits.  <u>See</u> S.O.U.F. ¶ 115.  After this change occurred, Mr. Portzline received the February 1989 letter from J.A. Blaine and its attachments, including the Unisys PRM SPD, which contained clear and unambiguous reservation of rights language. <u>See</u> S.O.U.F. ¶ 120.

Mr. Portzline claims that he does not recall if he read the reservation of rights language contained in the Unisys PRM SPD attached to the letter from J.A. Blaine.  <u>See id.</u>  As noted above, Judge Cahn has already held that the unreasonable failure to read operative plan documents does not give rise to a BOFD claim based upon alleged confusion that would have been corrected had the plan participant met his or her obligation to inform himself or herself about the terms of the plan.  <u>Unisys (E.D. Pa.) IV</u>, 1994 WL 284079, at *31.  Mr. Portzline also claims that he would not have understood the reservation of rights language in the Unisys PRM SPD if he had read it, because he had always been assured – in vague terms – that he would have benefits for life.  <u>See</u> S.O.U.F. ¶ 121.  This argument is foreclosed, however, by Judge Cahn's prior ruling that the language in the Unisys PRM SPD is "unambiguous."  <u>Id.</u> at *29.  The clear reservation of rights language on the COBRA form that Mr. Portzline signed apparently failed to make an impression on him for the same reason.  <u>See</u> S.O.U.F. ¶ 125.  Mr. Portzline also admits that he was eligible for the 1989 VERIP and, although he cannot recall if he received the 1989 VERIP packet, he admits that he received information about that program.  <u>See</u> S.O.U.F. ¶ 123.  As noted above, Judge Cahn has already ruled that all eligible employees received the September 1989 VERIP packet.  That packet contained clear and unambiguous reservation of rights

language that precluded the Unisys early retirees from successfully asserting BOFD claims.  <u>See</u> <u>id.</u>

Mr. Portzline admits that he never asked anyone if his retiree medical benefits could change or be terminated, choosing instead to rely on the vague statements he claims were made to him by various individuals before and after the merger of Burroughs and Sperry to form Unisys.  <u>See</u> S.O.U.F. ¶ 127.  Mr. Portzline was similarly non-inquisitive during his meetings with his branch manager, Archie Sybrandt, and Human Resources Representative Jean Jenco immediately prior to ending his employment with Unisys.  <u>See</u> S.O.U.F. ¶¶ 128-132.  Mr. Portzline testified that retirement medical benefits were barely discussed during these meetings, because "we all knew that we would be covered the rest of our life."  <u>See</u> S.O.U.F. ¶¶ 129, 131.  This testimony was contradicted by Mr. Portzline's sworn 1999 interrogatory responses, which he verified after reviewing his answers to ensure they were accurate and complete.  See S.O.U.F. ¶ 130.  There, he alleged only that "Archie Sybrandt told me that my retiree medical coverage would be affordable to my spouse and me."  <u>See</u> <u>id.</u>

Mr. Portzline's reliance on vaguely remembered statements about benefits and his own understanding that he would have benefits for life is simply not reasonable in the face of the repeated communications that Unisys made about its right to change or terminate the Unisys PRM Plan, including the February 1989 letter from J.A. Blaine which Mr. Portzline admits he received.  Mr. Portzline admits that, in the meetings immediately prior to his decision to leave Unisys, he asked no questions about whether his retirement medical benefits could change, and further that those benefits were barely discussed.  Neither Mr. Sybrandt nor Ms. Jenco made any statement to Mr. Portzline during these meetings that could be construed as a material misrepresentation.  Moreover, Mr. Portzline gave no indication to Mr. Sybrandt or Ms. Jenco

that he was either confused about retirement medical benefits or particularly concerned about those benefits.  Thus, their alleged failure to specifically inform him that Unisys could change or terminate the Unisys PRM Plan cannot constitute a material omission when Mr. Portzline had been provided with that information as part of the Unisys PRM SPD that he admits he received. No reasonable employee in Mr. Portzline's position would have been misled into making an uninformed choice about retirement based on the alleged statements and/or omissions made by Mr. Sybrandt and Ms. Jenco, and Mr. Portzline's claim fails as a result.

**C.      Summary Judgment Plaintiffs Sichel and Ross Cannot Prove That They Detrimentally Relied On Any Alleged Material Misrepresentation Or Omission**

In its decision affirming the District Court's adoption of the Magistrate Judge's Report and Recommendation, the Third Circuit emphasized that "a plaintiff *must* establish detrimental reliance in order to prevail" on a BOFD claim.  Unisys IV, 579 F.3d at 233 (holding that plaintiffs' argument that they need not establish detrimental reliance to prevail on BOFD claims was without merit) (emphasis supplied); see also Unisys III, 242 F.3d at 506 n. 8 ("detrimental reliance is a necessary element of a breach of fiduciary duty of this kind.").  The Third Circuit has also held that, except in limited circumstances not applicable here, the claimed detrimental reliance must have been reasonable.  Id. at 508 ("An employer, even when acting in a fiduciary capacity, is not responsible for harm that is not reasonably foreseeable.").  Unisys is therefore entitled to summary judgment on the BOFD claims of those Plaintiffs who, as a matter of law, cannot adduce concrete evidence of reasonable detrimental reliance on his or her alleged misunderstanding of the Unisys PRM Plan.  Here, Plaintiffs Sichel and Ross have no evidence of any reasonable detrimental reliance.

31

1.    **Plaintiff Ross Has Failed To Adduce Evidence Of Reasonable Detrimental Reliance**

Plaintiff Ross began working for Univac in October of 1959, continued working for Univac through the transition from Univac into Sperry, and then continued working for Sperry through the merger of Sperry and Burroughs to form Unisys in 1986. <u>See</u> S.O.U.F. ¶ 185. Mr. Ross worked within a division of Unisys known as Timeplex. <u>See</u> S.O.U.F. ¶ 186. The Timeplex division was sold to Ascom, a Swiss company, in 1991. <u>See id.</u> Mr. Ross ceased being a Unisys employee as a result of the sale of Timeplex, but continued to work for Timeplex and its successors until 1997. <u>See id.</u> Mr. Ross was not given a choice to remain at Unisys after the sale of the Timeplex division. <u>See id.</u>

Mr. Ross claims that, if he had known Unisys had the right to change or terminate the Unisys PRM Plan, he would have: (1) left Unisys to take another job offer in December of 1986; (2) obtained insurance other than the Unisys PRM Plan sooner; and (3) sought to find another position at Unisys to avoid leaving when the Timeplex division was sold. <u>See</u> S.O.U.F. ¶¶ 188, 191. Each of these allegations is insufficient to establish detrimental reliance as a matter of law.

First, Mr. Ross' claim that he would have left Unisys to take another job offer in December of 1986 cannot constitute reasonable detrimental reliance. In fact, in 1986, the Unisys PRM Plan did not even exist. As such, any alleged statement to Mr. Ross at that time could not have had anything to do with the Unisys PRM Plan at issue in this case and he could not have "detrimentally relied" before the relevant plan under which he got benefits even came into existence. Moreover, Mr. Ross has admitted that *regardless of plan, he was not entitled to <u>any</u> retiree medical benefits from Unisys in December of 1986.* <u>See</u> S.O.U.F. ¶ 190. Nor did he know in 1986 if he would ever become eligible for such benefits, because any number of things could have prevented him from ever becoming eligible; for example, he admitted that his

employment could have been involuntarily terminated before he obtained eligibility for retiree medical benefits.  See id.

The Third Circuit has held that, except in limited circumstances inapplicable here, a plaintiff's detrimental reliance must be reasonable to establish a BOFD claim.  Unisys III, 242 F.3d at 508 ("An employer, even when acting in a fiduciary capacity, is not responsible for harm that is not reasonably foreseeable.").  Even if Mr. Ross' claim is true, and he would have taken another job offer in 1986 if he had known that Unisys had the right to change or terminate a retirement medical benefit plan that he was never enrolled in and never entitled to, doing so would have been unreasonable.  No reasonable employee in Mr. Ross' position would have left Unisys based on the knowledge that Unisys had the right, but not the current intention, to change or terminate benefits to which that employee was not entitled, might never have become entitled and under which that employee did not ultimately retire.

Second, Mr. Ross' claim that he detrimentally relied by failing to seek other medical insurance before he did is belied by both logic and the undisputed facts.  First, Mr. Ross has admitted (and common sense dictates) that he would only have left the Unisys PRM Plan and purchased other insurance if he could have found other insurance less expensive than the insurance offered through the Unisys PRM Plan.  See S.O.U.F. ¶ 189.  Mr. Ross has also admitted, however, that he knows that less expensive insurance did not exist during the period after he left Unisys and before he became aware that Unisys had the right to change or terminate the Unisys PRM Plan.  See id.  Second, Mr. Ross has admitted that he became aware that Unisys had the right to change or terminate the Unisys PRM Plan in 1993, and yet he did not leave the Plan and obtain different insurance until 1997 because even then he could not find cheaper insurance.  See id.  In other words, Mr. Ross effectively admits that he in no way "relied" upon

33

his mistaken belief that he had vested retiree medical benefits in failing to obtain other insurance;

to the contrary, even with knowledge of Unisys' rights, he would have taken the same action

with respect to obtaining other insurance that he actually took.

Mr. Ross' final claim, that he would have tried to obtain another position with Unisys

when the Timeplex division was sold, fails because it is based on nothing more than Mr. Ross'

speculation that he could have obtained such a position.  Claims of detrimental reliance

supported only by speculation are insufficient to withstand summary judgment.  See Auerbach v.

Kantor-Curley Pediatric Assocs., No. Civ. A. 01-CV-854, 2004 WL 870702, at *7 (E.D. Pa.

Mar. 22, 2004); Jayne v. Archdiocese of Phila., Civ. A. No. 93-4039, 1994 WL 112212, at *4

(E.D. Pa. Mar. 25, 1994); Panzino v. Scott Paper Co., 685 F.Supp. 458, 462 (D.N.J. 1988).  In

Auerbach, the court held that a plaintiff could not defeat summary judgment by offering only his

own speculation that he would have sought and found another job if not for his employer's

misrepresentation.  2004 WL 870702 at *7.  The court explained that:

> [w]hen a plaintiff claims that he was injured because he refrained
> to seek other employment due to his reliance on an employer's
> misrepresentations, courts require that the plaintiff provide some
> evidence to support a finding that if he had known the truth he
> would have applied for other employment *and he would have been
> hired*[.]

Id. (citing Jayne v. Archdiocese of Phila., 1994 WL 112212, at *7; Panzino v. Scott Paper Co.,

685 F. Supp. at 462) (emphasis supplied).

Like the plaintiff in Auerbach, Mr. Ross can offer only his own speculation that he would

have actually found other employment at Unisys after the sale of the Timeplex division.  Mr.

Ross admitted that he was not offered another job at Unisys after the Timeplex sale, and that he

was not aware of any open positions he could have obtained.  See S.O.U.F. ¶¶ 191-192.  Instead,

Mr. Ross opines that he could probably have obtained such a position with his connections at

Unisys.  Yet Mr. Ross admits that he did not even think about this potential alternative course of

action until at least 2005.  See S.O.U.F. ¶ 192.  Mr. Ross' speculation about his prospects for

employment more than two decades after the fact is insufficient as a matter of law to establish a

claim of detrimental reliance.

          2.      **Plaintiff Sichel Has Failed To Adduce Evidence Of Reasonable Detrimental Reliance.**

Plaintiff Leonard Sichel has failed to adduce evidence that he would have acted any

differently if he had known Unisys had the right to change or terminate the Unisys PRM Plan,

and his BOFD claim therefore fails as a matter of law.

During his deposition, Mr. Sichel repeatedly admitted that, if he had known that Unisys

had the right to terminate the Unisys PRM Plan, he either does not know if he would have acted

differently, or knows that he would not have acted differently.  See S.O.U.F. ¶¶ 177-181, 183-

184.  For example, Mr. Sichel testified:

> Q.      Are you testifying that you would have looked for other
> employment that offered retiree medical benefits if you knew that Unisys
> had the right, but not necessarily that it would, to change the cost of your
> retiree benefits or terminate that plan?
>
> A.      I never looked at any of these decisions in the view that Unisys had
> the right to do something.  It was a matter of if they did, not the right to.
>
>           *       *       *
>
> Q.      But if you knew they had the right, but not necessarily that they
> would –
>
> A.      If I knew they had the right, I'm not sure what I would have done.

See S.O.U.F. ¶ 180.

During examination by his own attorney, Mr. Sichel gave testimony that could be

interpreted as inconsistent with his repeated admissions that he simply does not know if he

would have acted differently.[6]  See S.O.U.F. ¶ 182.  On redirect examination, however, Mr.

Sichel went even further than he had on direct, admitting that he would not have acted differently

if he had known that Unisys had the right, but not the current intention, to change or terminate

the Unisys PRM Plan.  See S.O.U.F. ¶ 183-184.

      In light of his own admissions, Mr. Sichel cannot bear his burden of showing that he

detrimentally relied on his alleged misunderstandings about the Unisys PRM Plan.  In order to

establish a BOFD claim, a plaintiff bears the burden of proving each element of that claim,

including detrimental reliance.  Unisys IV, 579 F.3d at 228.  To defeat summary judgment, a

plaintiff must offer concrete evidence as to each essential element of his claim on which he bears

the burden of proof.  Anderson, 477 U.S. at 256.  Mr. Sichel has failed to adduce concrete

evidence that he would have acted any differently if he had correctly understood the Unisys

PRM Plan, and has instead adduced evidence to the contrary.  Mr. Sichel cannot bear his burden

to prove detrimental reliance, and Unisys is therefore entitled to summary judgment on his

BOFD claim.

      Plaintiff Leonard Sichel's claim of detrimental reliance is also barred by the integration

clause of the severance agreement (the "Agreement and Release") he signed prior to his

separation from employment with Unisys.  It is the law of this case that a signed agreement

containing an integration clause is fatal to a claim of detrimental reliance.  In the Magistrate

Judge's Report and Recommendation on the claims of the Burroughs retirees that were tried

before him, the Magistrate Judge held that the one trial plaintiff who had signed an agreement

containing an integration clause could not establish detrimental reliance:

            The court concludes that Trial Plaintiff Walnut has failed to adduce

---

[6]    For the reasons explained in note 4, supra, the Court should disregard Mr. Sichel's testimony to the extent it
flatly contradicts, without explanation, his earlier testimony on direct examination.

evidence sufficient to show detrimental reliance.  Although he
contends that he agreed to the settlement of his claims with the
Company on the basis that the Settlement Agreement was based on
the terms of the 1986 VERIP, the Settlement Agreement does not
state that he would receive such benefits.  Rather, the Settlement
Agreement merely states that he would receive medical benefits
"in accordance with Unisys policy."  The Settlement Agreement
also contains an integration clause which states that it contains the
"entire agreement" of the parties.

In re Unisys Corp. Retiree Med. Benefits ERISA Litig., No. 03-3924, 2006 WL 2822261, at *55

(COL ¶42) (E.D. Pa. Sept. 29, 2006).  Based on this conclusion of law, the Magistrate Judge

recommended judgment for Unisys on Mr. Walnut's claim.  The Magistrate Judge's conclusion

of law on this point was subsequently adopted by this Court and the Third Circuit.  See Unisys

IV, 579 F.3d at 233-34; In re: Unisys Corp. Retiree Med. Benefits ERISA Litig., No. 03-3924,

2007 WL 2071876, at *9 (E.D. Pa. July 16, 2007).  In adopting the Magistrate Judge's Report

and Recommendation on this point, this Court relied on the fact that "[t]he Settlement

Agreement contained an integration clause that stated it contained the 'entire agreement' of the

parties and it did not promise lifetime benefits."  Id. at *9.

Plaintiff Leonard Sichel left Unisys pursuant to the terms of the Agreement and Release

that he signed on May 15, 1991.  See S.O.U.F. ¶¶ 163, 168.  Mr. Sichel admitted that he read the

Agreement and Release, including the integration clause contained therein, and reviewed its

terms with Human Resources Representative Jim Dodd before he signed it.  See S.O.U.F. ¶¶ 162,

165.  The integration clause stated:

This Agreement and Release constitutes the entire agreement
between you and Unisys.  There are no oral or written agreements
or understandings that vary from the terms set forth herein.

See S.O.U.F. ¶ 164.  The Agreement and Release makes no guarantee of lifetime retirement

benefits, providing only that "[c]oincident with a layoff, your vacation pay, medical benefit

coverage and conversion privileges will be provided pursuant to applicable Unisys policy."  See

S.O.U.F. ¶ 166.  Mr. Sichel admitted that he understood that, based on this provision, his

retirement medical benefits would be provided pursuant to the Unisys PRM Plan.  See S.O.U.F.

¶ 167.

    The relevant terms of the Agreement and Release signed by Mr. Sichel are substantively

identical to the terms of the agreement signed by Mr. Walnut.  Like Mr. Walnut, Mr. Sichel

cannot claim to have detrimentally relied on an alleged misrepresentation whose existence he

specifically disclaimed by signing an agreement with an integration clause.  For this independent

reason, Unisys is therefore entitled to summary judgment on Mr. Sichel's claim.

**D.    This Case Is Not Governed By The Findings Made In The October 2005 <u>Adair</u> Trial
       Regarding Employees Who Received Retiree Medical Benefits Under The
       Burroughs PRM Medical Plan**

    Unisys anticipates that Plaintiffs will suggest that this case should be governed by the

judgment reached by Magistrate Judge Reuter based upon the factual findings related to the

claims of certain Burroughs regular retirees that were tried before him in October 2005.  There,

Magistrate Judge Reuter found that, given the context of the communications in that case,

accurate statements about the then-existing cost of retiree medical benefits could constitute a

breach of fiduciary duty if they were not coupled with a verbal reservation of rights.  See In re

Unisys Corp. Retiree Med. Benefits ERISA Litig., No. 03-3924, 2006 WL 2822261, at *49

(COL ¶ 22) ("[T]he Company knew that by failing to qualify those statements with the caveat

that the Company could modify or terminate the retirees' medical benefits at any time, its

employees would be misled when they made the important decision to retire.").   The present

case, however, stands in stark contrast to the cases brought by participants who received retiree

medical benefits from Unisys through a pre-merger Burroughs (or Sperry) plan.

In ruling in the Adair matter that, despite the fact that the statements made to the Adair trial plaintiffs about retiree medical benefits were "not facially false statements," they were material misrepresentations, the Magistrate Judge focused heavily upon the context in which those statements were made. Indeed, Plaintiffs' counsel characterized the Adair decision as a "narrow and fact-bound case" premised upon a "highly developed, idiosyncratic factual record." See Appellees' Motion for Reconsideration and Response to Motion to Stay the Mandate, attached hereto as Ex. 3, at 10. As noted above, the context in the present case is dramatically different.

First, the Magistrate Judge based his finding in large part upon the fact that the Adair trial plaintiffs had to retire prior to April 1, 1989 in order to participate in the Burroughs PRM Plan, rather than the Unisys PRM Plan. The Magistrate Judge found that "[t]he Company was aware that employees were electing to retire by March 31, 1989 in order to receive retiree medical benefits under the Burroughs Plan or the Sperry retiree plans rather than under the new Unisys PRM Plan." See In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 2006 WL 2822261, at *12 (FOF ¶ 72). He emphasized that "the Company advised at least some of the Trial Plaintiffs that there was a limited time frame in which to secure retiree medical benefits under the Burroughs Plan" and that he found that "the Company was aware that information concerning retiree medical benefits was critical to such employees." Id. at *48 (COL ¶ 20).

Similarly, in finding that the "not facially false statements" equated to an "inadequate disclosure," the Magistrate Judge found a "significant temporal aspect to the present factual scenario" in part based upon "Company knowledge that participation in a specific medical plan was considered a powerful motivation in the retirement decision." Id. at *53 (COL ¶ 36). Because of the announcement of the April 1, 1989 date for implementation of the Unisys PRM

Plan, the Magistrate Judge concluded that "the Company created a sense of urgency for many of the Trial Plaintiffs in making their retirement decisions," and "repeatedly presented deadlines by which the employees needed to retire in order to secure retiree medical benefits under the Burroughs Plan." Id.   The Court also relied upon documents that it found evidenced Unisys' knowledge that the switch from the Burroughs PRM Plan to the Unisys PRM Plan as of April 1, 1989 was a significant factor in its employees' retirement decision. Id. at *52 (COL ¶ 33).   The Court concluded "[a] reasonable fiduciary *in this context* would have foreseen that its conduct towards each of the Trial Plaintiffs would result in important decision making on his or her part based on a mistaken belief that he or she possessed guaranteed lifetime benefits." Id. at *53 (COL ¶ 36) (emphasis added).

The District Court adopted the decision of the Magistrate Judge insofar as he found that the plaintiffs had proven material misrepresentations and/or admissions.  In affirming that decision, the Third Circuit, like the Magistrate Judge, emphasized that Unisys was aware that its employees were retiring in advance of April 1, 1989 for the purpose of obtaining retiree medical benefits under the Burroughs PRM Plan, which they could not obtain after that date.

In contrast to this contextual background surrounding the claims of the Adair trial plaintiffs, each Plaintiff in this case decided to remain employed at Unisys despite the Company's announcement that anyone retiring after April 1, 1989 would obtain retiree medical benefits only under the Unisys PRM Plan.  Moreover, once April 1, 1989 passed, the only plan contemplated for these retirees was the Unisys PRM Plan.  There was no "sense of urgency" or "deadline" for any Plaintiff to retire in order to participate in that Plan.  To the contrary, once eligible, Plaintiffs would receive benefits under the terms of the Unisys PRM plan *regardless of when they retired*.  In short, each could have continued to work past their last day of

employment and retired with retiree medical benefits under the exact same plan.  In this context,

Unisys had no reason to believe, and did not believe, that despite the Company's repeated

written disclosures of its right to change or terminate the Unisys PRM Plan, any employee was

retiring in reliance on a misunderstanding that Unisys could not change or terminate that Plan.

Second, in reaching his conclusion that there were material misrepresentations and

omissions in the Adair trial, the Magistrate Judge also held that the Burroughs retiree SPD that

described the benefits available to retirees was of little value because "it was the Company's

policy that the retiree SPD was available upon request, but was distributed only after the

Company had received an enrollment card pursuant to which the retiree had elected benefits

under the Burroughs Plan."  See id. at *48 (COL ¶ 21).  In other words, the Court found that

Unisys failed uniformly to distribute that SPD prior to employees making their retirement

decisions.  In addition, the Magistrate Judge also found that although the retiree medical benefits

were provided to retirees under the same medical plan that provided benefits for active retirees,

for which employees had received an SPD with a clear and unambiguous ROR while employed,

the Company had caused confusion on that point such that employees did not understand that the

SPD they had received as employees governed their retiree medical benefits.  See id.[7]  Thus, the

Court found that in the Adair case, the conversations between alleged fiduciaries and the

Burroughs regular retirees occurred in a context in which the retirees could not reasonably have

been believed to have read and understood the clear and unambiguous reservation of rights

language applicable to the retiree medical benefit plan being discussed.

---

[7]     Here, the Flexible Benefit SPD also contained a clear and unambiguous reservation of rights clause, but the
        Court need not rule at this point on its applicability to retiree medical benefits as there is no dispute the Unisys
        PRM Plan SPD was distributed to employees in February 1989, before any Group One Trial Plaintiff retired
        and even before the Unisys PRM Plan was implemented.

In this case, by contrast, there is no dispute that Unisys sent the 1989 Blaine letter, with the attached Unisys PRM SPD, to all eligible employees in February 1989, well before any of the Plaintiffs retired.  In fact, both Judge Cahn and the Third Circuit have already held that employees received the Unisys PRM SPD.   In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 957 F. Supp. at 635 ("The reservation of rights clause, published in the summary plan description ("SPD") *which all participants received*"); Unisys III, 242 F.3d at 503 ("To the contrary, pursuant to the relevant provisions of ERISA, Unisys regularly distributed to its employees and retirees SPDs").  As such, the Court must assess whether the truthful statements the Summary Judgment Plaintiffs here claim were made to them about retiree medical benefits can constitute material misrepresentations or omissions against the backdrop of those same Plaintiffs having received clear and unambiguous information indicating that Unisys could change or terminate their retiree medical benefits under the Unisys PRM Plan.  As noted below, because some of the Group One Trial Plaintiffs have claimed that they do not recall receiving the 1989 Blaine letter and accompanying Unisys PRM SPD, Unisys has conservatively elected to move for summary judgment only against those Group One Trial Plaintiffs who admitted receiving those documents, and who, therefore, were unambiguously advised by Unisys prior to their decision to retire that Unisys could change or terminate the Unisys PRM Plan at any time.

Third, as Judge Cahn has already found, there was no evidence of a "systematic campaign of confusion" related to Unisys' right to modify or terminate the Unisys PRM Plan, unlike that found by the court related to the Sperry and Burroughs plans.  See Unisys (E.D. Pa.) IV, 1994 WL 284079, at *29 (finding against the Unisys Early Retiree class, who retired under the same Unisys PRM at issue here during the same time frame at issue in this case, on their BOFD claims).  To the contrary, from the very beginning of its efforts to roll out Unisys benefit

plans to replace the preexisting Sperry and Burroughs plans, Unisys clearly and unambiguously advised employees that the Company could change and/or terminate those plans. When it formally announced the new Unisys PRM Plan in February 1989, the Company clearly and unambiguously told employees that the contributions paid by retirees could change and that the plan could change or be terminated. None of the written documents contain any language suggesting that the Unisys PRM Plan provided vested or guaranteed benefits that could not change. In fact, as Judge Cahn noted in ruling in Unisys' favor on the BOFD claims of the Unisys early retirees, unlike the Sperry plans, neither the Unisys PRM SPD nor the informal written communications about the Unisys PRM Plan used the word "lifetime" to describe participants' retiree medical benefits. Id. at *33. In contrast to the Sperry and Burroughs plans, which had existed for decades without significant changes for participants once they retired, the Unisys PRM Plan only came into being April 1, 1989, the cost to participate changed yearly (and was not guaranteed to remain in effect), and plan changes were made and communicated annually. This history of disclosures regarding Unisys' right to change or terminate the Unisys PRM Plan and the actual yearly changes to that plan provided the only reasonable context that Plaintiffs had to rely upon in reaching any conclusions about that plan.

In short, this case has none of the alleged "context" that led to findings in the Adair case that otherwise truthful statements were material misrepresentations and omissions and that twelve of the Adair trial plaintiffs had proven their BOFD claims. As Plaintiffs' counsel themselves recognized in arguing that the Adair decision was "fact specific" and "idiosyncratic," "divergent facts lead to different rulings." See Ex. 3 at 13, 15. In that regard, this case is more in line with the Third Circuit's decisions in Edgar, 503 F.3d at 350 and Leuthner v. Blue Cross & Blue Shield of Ne. Pa., 454 F.3d 120, 129 (3d Cir. 2006). In Edgar, the Third Circuit held that

when the information at issue is presented in an SPD, there logically can be no BOFD based on

the purported failure to disclose that same information again.  In <u>Leuthner</u>, the plaintiffs'

allegations were almost identical to those made by the Summary Judgment Plaintiffs here:

> Mikulis and Melley claim that Blue Cross knowingly made various
> material misrepresentations and omissions about Plan benefits and
> amendments.  In particular, they maintain that they had no notice
> before the 1993 Plan amendment that Blue Cross could alter the
> Plan.  They also allege that Blue Cross's pre-2001 practice of
> applying Plan changes only prospectively led them to believe that
> any future changes would be prospective.  They further claim that
> they relied upon Blue Cross's misrepresentations and omissions to
> their detriment.  Mikulis contends that, but for Blue Cross's
> misrepresentations and omissions, she would not have taken early
> retirement.  Melley alleges that her late husband made retirement
> and insurance decisions based upon the promise of continuing
> lifetime health benefits for his spouse, even in the event of his
> death.

<u>Leuthner</u>, 454 F.3d at 123.  Absent the unique factual findings that applied in <u>Adair</u>, and do not

apply in this case, the <u>Leuthner</u> court concluded that a "representation is not a misrepresentation

if it is an accurate reflection of the plan administrator's intent when the statement was made."[8]

<u>Id.</u> at 129.

The decisions in <u>Edgar</u> and <u>Leuthner</u> are directly on point in this case, and are fatal to the

claims of the Summary Judgment Plaintiffs.

---

[8]    <u>See also</u> <u>Balestracci v. NSTAR Elec. & Gas Corp.</u>, 449 F.3d 224, 233 (1st Cir. 2006) (finding no
"misrepresentation" when "company omitted the fact that … benefits could be terminated or amended during
meetings prior to [retirement]" where "plaintiffs were put on notice of the company's right to modify, amend
and terminate the plan" in its SPD); <u>Sprague</u>, 133 F.3d at 405 (en banc); (finding no BOFD where "company
did not tell the early retirees at every possible opportunity that which it had told them many times before –
namely, that the terms of the plan were subject to change");  <u>Hussey v. Chase Manhattan Bank</u>, 418 F. Supp.
2d 702, 715 (E.D. Pa. 2005) ("A statement that is true when made obviously cannot give rise to a breach of
fiduciary duty."); <u>Diamore v. Am. Honda Motor Co.</u>, 248 F. Supp. 2d 82, 86 (D. Conn. 2002) (holding that
statements that were true when made were not misrepresentations); <u>McCall v. Burlington N. Sante Fe Co.</u>, 237
F.3d 506, 511-513 (5th Cir. 2000) (holding that because the alleged statement was "truthful when made, it
cannot support a cause of action against [defendant] for breach of fiduciary duty based on a material
misrepresentation").

**E.      The Court Should Grant Summary Judgment On The BOFD Claims Of Plaintiffs Albright, Larsen And Zebrowski Because They Either Could Not Or Would Not Participate In Discovery**

As part of the stipulated process for the Group One trial of certain claims in this case that was approved by the Court, both parties identified ten "local" Plaintiffs, for a total of twenty, from among the <u>Aamodt</u> plaintiffs for discovery and, if necessary, trial.  Three of the Plaintiffs identified have failed to prosecute their claims, because they either would not or could not participate in discovery.  These Plaintiffs are:  (1) Stanley Zebrowski, who Plaintiffs' counsel has advised Unisys does not wish to participate in the litigation; (2) Robert Larsen, who Plaintiffs' counsel has advised Unisys is unable to participate because he suffers from Alzheimer's Disease, and no surviving spouse has stepped forward to prosecute this claim; and (3) George Albright, who Plaintiffs' counsel has advised Unisys is deceased, and no surviving spouse has stepped forward to prosecute this claim.[9]  Accordingly, Unisys asks this Court to grant summary judgment on the claims of Summary Judgment Plaintiffs Albright, Larsen, and Zebrowski.

---

[9]    In addition to these three, Plaintiff John Mkhalian also passed away.  However, Plaintiffs' counsel has advised Unisys' counsel that Mr. Mkhalian's wife wishes to prosecute the case and is willing to participate in the discovery process, but cannot do so during the time frame for the Group One Trial due to her husband's recent death.  As such, Unisys has not moved for summary judgment of Mr. Mkhalian's claim even though the parties will not be able to try that claim as part of the Group One Trial.

## V.     CONCLUSION

For the foregoing reasons, Defendant Unisys Corporation respectfully requests that the

Court grant its Motion for Summary Judgment and dismiss with prejudice the breach of fiduciary

duty claims of Plaintiffs Marguerite Mahoney, Wallace George, Robert Barnes, Madeline King,

Bernard Zaber, Leonard Sichel, Floyd Ross, Leonard Portzline, George Albright, Robert Larsen

and Stanley Zebrowski.

Respectfully submitted,


/s/ Joseph J. Costello
JOSEPH J. COSTELLO (No. 44327)
PAUL C. EVANS (No. 84535)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103

JOSEPH A. TEKLITS (No. 51831)
Unisys Corporation
Unisys Way
MS E8-114
Blue Bell, Pennsylvania 19424
Attorneys for Defendant Unisys Corporation

# EXHIBIT 1

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 94-1912

IN RE:  UNISYS CORP. RETIREE MEDICAL BENEFIT
"ERISA" LITIGATION

*Robert T. Dreegar; Ronald R. Bennett; Kenyon Bement;
Donald Wagner; Lucius Browne; Donald Fabry; Thomas
Durkin; Bernard Hart; Herman Hein; Donald L. Thompson;
Jim M. Eaves, individually and on behalf of all members
of the Burroughs Class and Unisys Class previously
certified by the Court who were not participants in
special early retirement incentive programs and their
eligible spouses and dependents (referred to by the
Court as "Burroughs and Unisys non-VERIP plaintiffs"),

Appellants

*(Pursuant to F.R.A.P. Rule 12(a))

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. MDL 969)
District Judge: Honorable Edward N. Cahn

Argued
May 4, 1995
Before:  Mansmann, Scirica and McKee, <u>Circuit Judges</u>.

(Filed JUN 2 8 1995, 1995)

MEMORANDUM OPINION OF THE COURT

MANSMANN, <u>Circuit Judge</u>.

        This appeal, like its companion appeals in Nos.
94-1800, 94-1801 and 94-1875, arises out of Unisys' decision to
terminate the retiree medical benefit plans under which it had
previously provided coverage, and to replace those plans with a

new plan under which Unisys would eventually shift the entire
cost of providing medical benefit coverage to the plan's
participants, the retirees. The appellants here, former Unisys
or Burroughs employees (and their eligible spouses and
dependents) who were receiving retiree medical benefits from the
Burroughs Plans or Unisys Plan at the time of the company's
action to terminate these plans, have appealed the district
court's grant of summary judgment, in Unisys' favor, on the
retirees' claims that Unisys had denied them vested benefits in
violation of ERISA. On appeal to us, these retirees allege that
the district court erred, as a matter of law, in holding that the
Burroughs and Unisys Plans were unambiguous and erred in holding
that the retirees could not establish their claim for medical
benefits on equitable estoppel grounds.[1]

        Because the historical facts, which are not in dispute,
have already been recited extensively, both in the district
court's opinion granting summary judgment, see In re Unisys, 837
F. Supp. 670 (E.D. Pa. 1993), and in our own opinions in the
appeals docketed at Nos. 94-1800 and 94-1875, we do not reiterate
these facts here. Rather, we turn to the issues raised on appeal

---

1.      The retirees have also appealed from the district
court's May 26, 1993 order striking their demand for a jury
trial. We need not address this issue given our disposition of
the ambiguity issue.

2

and discuss the facts insofar as they relate and pertain to our analysis of these issues.[2]

## I.

In this case, as in all of the other consolidated appeals, Unisys maintained that it had an inherent right to terminate the retirees' medical benefit plans based on unambiguous reservation of rights language in the official plan documents. The 1988 summary plan description for the Unisys Post-Retirement and Extended Disability Medical Plan, which applied to all class members who retired after April 1, 1989, contained the following provision:

> Unisys expects to continue the plans described in this booklet, but necessarily reserves the right to change or end them at any time. The Company's decision to change or end the plans may be due to changes in federal or state laws governing welfare benefits, the requirements of the Internal Revenue Code or ERISA, the provisions of a contract or a policy involving an insurance company or any other reason.

(Emphasis added) (A 360).[3]  Similarly, the SPD for the 1985

---

2.      The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(f).  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review over the district court's grant of summary judgment.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Bixler v. Central Penna. Teamsters Health and Welfare Fund, 12 F.3d 1292, 1297-8 (3d Cir. 1993).

3.      The retirees make a belated attempt to raise a factual question as to what constituted the Unisys SPD.  The retirees assert that the district court refused to consider evidence as to whether the documents in which the Unisys reservation clauses appeared even applied to retirees.  They argue that the court,

(continued...)

3

version of the Burroughs' retiree medical benefit plan contained

the following reservation of rights clause:

> While Burroughs does not presently plan to do
> so, it necessarily <u>reserves the right to
> terminate or modify the plan at any time,</u>
> which will result in the termination or
> modification of your coverage.

(Emphasis added) (A 758).[6]

---

3.   (...continued)
"without comment accepted a clause appearing in a 1988 booklet
describing a variety of benefit plans for <u>active</u> employees as
applicable to the medical plan for retired employees which was
not created until 1989."

    The district court's decision did not acknowledge the
existence of a factual question regarding whether this SPD
applied to the retiree plan.   <u>In re Unisys</u>, 837 F. Supp. at 675-
76.   Nonetheless, we find that there is no genuine issue of
material fact as to what constituted the applicable Unisys SPD,
as the Summary of Plan Provisions of the Unisys Post-Retirement
and Extended Disability Medical Plan expressly incorporated the
1988 Unisys SPD set forth above.

4.       On June 30, 1993, while discovery was ongoing, Unisys
filed a motion for summary judgment seeking entry of judgment
against all the Sperry, Burroughs and Unisys retirees other than
those who retired pursuant to special incentive early retirement
offerings.   In this motion, Unisys argued that summary plan
description booklets, on their face, established that the company
had unambiguously reserved a right to amend or terminate the
medical plans during a participant's retirement.   The retirees
argued that the reservation clauses did not apply to already-
retired employees and on July 8, 1993, counter-moved pursuant to
Rule 56(f) for an order refusing or continuing Unisys' motion
pending the completion of further discovery.   The retirees' Rule
56(f) motion was supported by the affidavit of plaintiffs'
counsel, attesting to the incomplete state of discovery and the
type of evidence likely to emerge from that discovery.   (A 1142).

    On October 13, 1993, the district court rendered its
decision on Unisys' motion for summary judgment.   With respect to
the Burroughs and Unisys regular retirees, the court held that
there were no genuine disputes as to any material fact, and that
the reservation of rights clauses in the documents presented by
Unisys, on their face, were unambiguous and not susceptible to
any alternate interpretation.   Because the district court found
    (continued...)

4

We find that these reservation of rights clauses are
not ambiguous and cannot be read, as the retirees suggest, to
apply only to active employees.  Although the retirees submitted
affidavits from class members stating that, based on past
practice and course of conduct, they understood there to be a
"lock-in" policy under which changes in medical benefit coverage
could only affect active employees and not employees who had
already retired, resort to this extrinsic evidence was not
warranted[5] because the clauses are not ambiguous, and on their

---

4.   (...continued)
that it was not possible to interpret the clauses relied upon by
Unisys in any manner other than that alleged by the company, the
court declined to consider any extrinsic evidence to contradict
the written terms of the summary plan description.  The court
denied plaintiffs' Rule 56(f) request to continue the summary
judgment motion pending the completion of discovery, concluding
that further discovery was unnecessary because "none of this
material . . . would change the court's analysis of the threshold
legal question."  837 F. Supp. at 673.

     The Burroughs and Unisys retirees' assertion that the
district court erred in denying their motion under Rule 56(f) is
without merit.  Due to the fact that all of the SPDs upon which
Unisys relied in seeking summary judgment had been produced in
the course of discovery prior to the district court's decision on
summary judgment and because additional discovery would not have
precluded summary judgment, we find that the district court did
not abuse its discretion in denying the retirees' motion pursuant
to Fed. R. Civ. P. 56(f).  See, e.g., Lunderstadt v. Colafella,
885 F.2d 66 (3d Cir. 1989); United States v. 225 Cartons More or
Less of an Article or Drug, 871 F.2d 409, 420 (3d Cir. 1989)
(holding Rule 56(f) motion had been properly denied where
discovery was immaterial as a matter of law).

5.     The district court held that if the retirees'
interpretations of the reservation of rights clauses were
plausible, the court would be obliged to consider this evidence.
In addressing the legal question of whether the Burroughs and
Unisys SPDs were ambiguous, the district court concluded that the
alternative interpretations of the summary plan descriptions
suggested by the regular retirees -- that the reservation of
                                          (continued...)

5

face do not distinguish between active employees and retirees.
Moreover, since the Unisys and Burroughs SPDs contained a
reservation of rights clause with no apparently conflicting
promise of lifetime benefits, we hold that the district court did
not err in finding that the alternative interpretation of the
retirees was not sufficiently plausible to allow extrinsic
evidence to alter the clear meaning of the text of the plans.[6]

ERISA requires that "[e]very employee benefit plan
shall be established and maintained pursuant to a written
instrument." 29 U.S.C. § 1102(a)(1); Hozier v. Midwest
Fasteners, Inc., 908 F.2d 1155, 1163 (3d Cir. 1990). ERISA's
framework ensures that employee benefit plans be governed by

---

5.  (...continued)
rights in the summary plan descriptions only applied to active
employees or permitted only those changes required by law -- were
unreasonable.  In re Unisys, 837 F. Supp. at 675-77.

6.      The regular retirees also complained that the district
court "ruled that it would not consider other language appearing
in the documents relied upon by Unisys because the word
'lifetime' did not appear elsewhere in the documents, as it did
in the SPDs applicable to the Sperry retirees." (Appellants'
Brief at 36).  See 837 F. Supp. at 674-75 and n.5.  This
assertion is without merit.  The district court did not refuse to
consider other plan language in the SPDs; it refused to analyze
evidence of the "corporate culture" of Unisys, Burroughs and
Sperry as reflected in evidence extrinsic to the SPDs.  Id. at
675 n.5.  The district court, in focusing its discussion of the
Burroughs and Unisys SPDs on the reservation of rights clauses,
observed, that in contrast to the Sperry regular retirees, the
Burroughs and Unisys regular retirees "failed to point to any
other language in the SPDs that would have even arguably created
an ambiguity."  The court, confining its analysis to the written
documents, observed that the Burroughs and Unisys retirees could
not avail themselves of the alternative argument advanced by
Sperry retirees that the presence of lifetime language in the
Sperry SPDs rendered the plans internally inconsistent, because
the Unisys and Burroughs plan documents did not discuss lifetime
benefits.  837 F. Supp. at 675 n.5.

6

written documents and summary plan descriptions which are the
statutorily established means of informing participants and
beneficiaries of the terms of their plans and its benefits.  29
U.S.C. §§ 1022(a) and 1102.  Because Congress intended that plan
documents and SPDs exclusively govern an employee's obligations
with respect to an ERISA plan, we have established a policy
disfavoring informal plan amendments.  See Hozier, supra; Confer
v. Custom Engineering Co., 952 F.2d 41, 43 (3d Cir. 1991);
Schoonejongen v. Curtiss-Wright Corp., 18 F.3d 1034, 1040 (3d
Cir. 1994), rev'd and remand on other grounds, ___ U.S. ___, 115
S. Ct. 1223 (1995).  Thus, while the retirees proffered extrinsic
evidence of informal communications (human resource bulletins,
newsletters and internal memoranda), this evidence cannot be
relied upon to alter or contradict the unambiguous reservation of
rights clauses in the Unisys and Burroughs SPDs.  Accordingly,
the district court did not err in refusing to analyze the
retirees' extrinsic evidence in support of their interpretation
of the reservation of rights clauses which contradicted the
clauses' broad and unequivocal terms.


                                II.

     The district court also granted summary judgment in
favor of Unisys on the estoppel claims of all of the regular
retirees.  In re Unisys, 837 F. Supp at 680-81.  The Unisys and


                                7

Burroughs retirees contend that the district court erred in holding that these estoppel claims failed as a matter of law.[7]

We have held that to recover benefits under an equitable estoppel theory an ERISA beneficiary must demonstrate a material misrepresentation, reasonable and detrimental reliance upon the misrepresentation and extraordinary circumstances. Curcio v. John Hancock Life Insurance Co., 33 F.3d 226 (3d Cir. 1994); Smith v. Hartford Insurance Group, 6 F.3d 131 (3d Cir. 1993).[8] Since we have concluded that the plans unambiguously

---

7.      On July 26, 1994, following the district court's post-trial decision on the contract claims of the Sperry retirees, the Sperry regular retirees moved for reconsideration of the district court's summary judgment ruling on their estoppel claim and on their claim for breach of fiduciary duty. The district court granted this motion with respect to the Sperry retirees' claims for breach of fiduciary duty in light of our decision in Bixler v. Central Penna. Teamsters Health and Welfare Fund, 12 F.3d 1292 (3d Cir. 1993). The district court ruled that it would hold the Unisys and Burroughs retirees' motion for reconsideration of their breach of fiduciary claim in abeyance pending our decision on interlocutory appeal on the related claim of the Sperry retirees in No. 94-1875.


8.      The district court concluded that the estoppel claims of the regular retirees failed as a matter of law because given the unambiguous SPDs, the regular retirees could not demonstrate plan ambiguity, reasonable detrimental reliance or extraordinary circumstances. The district court found that "there are no substantiated allegations of fraud or bad faith on Unisys' part." However, in our recent decisions in Curcio v. John Hancock Mutual Life Insurance Co., 33 F.3d 226 (3d Cir. 1994) and Smith v. Hartford Insurance Group, 6 F.3d 131 (3d Cir. 1993), of which the district court did not have the benefit, we did not require fraud or bad faith as an element of an estoppel claim.

The district court also found, "Furthermore, estoppel claims are available only when plan documents are adjudged ambiguous." (citing Alday v. Container Corp. of America, 906 F.2d at 666, (11th Cir. 1990). While in Curcio, supra, and Smith, supra, we did not require an express finding of plan
                                              (continued...)

reserved the company's right to terminate its retiree medical benefit plans, the retirees cannot establish "reasonable" detrimental reliance based on an interpretation that the summary plan descriptions promised vested benefits.  The retirees' interpretation of the plans as providing benefits which were vested upon retirement cannot be reconciled with the unqualified reservation of rights clause in the plans.  Thus, the district court did not err in concluding on summary judgment, as a matter of law, that the estoppel claims of the Unisys and Burroughs retirees could not be established.

### III.

Accordingly, we will affirm the judgment of the district court.

TO THE CLERK:

Please file the foregoing opinion.

_Carol Los Mansmann_
Circuit Judge

---

8.   (...continued)
ambiguity as an element for establishing an estoppel claim, we have required that detrimental reliance be "reasonable."  Because we also require that any detrimental reliance on plan language must be "reasonable," the court's finding that the reservation of rights clauses were unambiguous undercuts the reasonableness of any detrimental reliance by the retirees here.

9

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 94-1912

IN RE:  UNISYS CORP. RETIREE MEDICAL BENEFIT
"ERISA" LITIGATION

*Robert T. Dreegar; Ronald R. Bennett; Kenyon Bement;
Donald Wagner; Lucius Browne; Donald Fabry; Thomas
Durkin; Bernard Hart; Herman Hein; Donald L. Thompson;
Jim M. Eaves, individually and on behalf of all members
of the Burroughs Class an Unisys Class previously
certified by the Court who were not participants in
special early retirement incentive programs and their
eligible spouses and dependents (referred to by the
Court as "Burroughs and Unisys non-VERIP plaintiffs"),

Appellants

*(Pursuant to F.R.A.P. Rule 12(a))

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. MDL 969)

JUDGMENT

This cause came to be considered on the record from the

United States District Court for the Eastern District of

Pennsylvania and was argued on May 4, 1995.

On consideration whereof, it is now here ordered and

adjudged by this court that the judgment of the district court

entered on September 8, 1994 be and the same is hereby affirmed.

Costs taxed against appellants.

ATTEST:

*P. Douglas Sisk*

Clerk

JUN 2 8 1995

10

# EXHIBIT 2

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 94-1801

---

IN RE:  UNISYS CORP. RETIREE MEDICAL BENEFIT
"ERISA" LITIGATION

*Ralph Bieber and Donald J. Paquette, individually
and on behalf of all members of the Unisys Class
previously certified by the Court who were
participants in the fall 1989 and fall 1991 early
retirement incentive programs and their eligible
spouses and dependents (referred to by the Court
as "Unisys 1989 and 1991 VERIP Plaintiffs"),

Appellants

*(Pursuant to F.R.A.P. 12(a))

---

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District:  0313-2:  MDL 969)
District Judge:  Honorable Edward N. Cahn, Chief Judge

---

Argued
May 4, 1995
Before:  MANSMANN, SCIRICA and McKEE, Circuit Judges.

(Filed    June 28, 1995)

---

MEMORANDUM OPINION OF THE COURT

---

MANSMANN, Circuit Judge.

This appeal is one of five before us arising from the
termination of post-retirement medical plans offered to retirees
and their spouses through Unisys Corporation and its corporate
predecessors, Sperry Corporation and Burroughs Corporation.  This
appeal focuses specifically on claims made by those who retired

from Unisys pursuant to "voluntary early retirement incentive programs" offered in the fall of 1989 and the fall of 1991.[1]

In November, 1992, Unisys announced that effective December 31, 1992, it would terminate existing post-retirement medical plans funded through cost-sharing and replace them with a revised plan which would gradually shift the entire cost of medical coverage to the retirees. A spate of lawsuits filed pursuant to ERISA followed. Cases pending in several states were transferred to the Eastern District of Pennsylvania and three plaintiff classes were certified pursuant to Fed. R. Civ. P. 23(b)(2).

As members of one of the subclasses of Unisys early retirees, the Unisys VRIPs argued that in accepting an early retirement package, they had relinquished future income and accrual of pension benefits in return for attractive items in the VRIP package. One of these items, they said, was the right to receive vested lifetime medical benefits. Because the 1992 termination of the post-retirement medical plan substantially affected the medical benefits under which they had retired, the VRIPs challenged the termination, alleging breach of fiduciary duty, equitable estoppel, and breach of contract.

The breach of contract claim had two components. The VRIPs argued first that the plan documents contained lifetime

_____

1.        Throughout the course of the litigation this class of retirees has been referred to as "VRIPs" of "VERIPs". At the time of their retirement, the VRIPs were participants in the Unisys Post-Retirement and Disability Plan.

2

language <u>and</u> a reservation of rights clause, making the plan

documents ambiguous.  The VRIPs contended that once this

ambiguity was resolved through extrinsic evidence, it would be

clear that there had been a promise of lifetime benefits and that

this promise was inconsistent with the plan termination.  The

second breach of contract theory advanced by the VRIPs was based

upon an alleged bilateral contract created when the VRIPs

accepted the terms of the early retirement offers.  The district

court summarized this theory as follows:

> [VRIPs] base their contract claim on a
> bilateral contract theory . . . that by
> signing up for the VERIP, they entered into
> separate bilateral contracts independent of
> the normal retiree benefit plans, and that
> this created a binding contract under which
> Unisys was not free to change the terms.

1994 W.L. 284079, 28 (E.D. Pa. 1994).

The VERIP claims, along with claims made by Sperry

regular and incentive retirees and the Burroughs incentive

retirees, were tried to the district court.  Ruling on the VRIP

claims, the district court rejected each of the theories of

liability and entered judgment for Unisys.  On July 11, 1994, the

court entered a superseding order and final judgment which was

certified for appeal pursuant to Fed. R. Civ. P. 54(b).  It is

from this order that the VRIPs appeal.  Because we conclude that

the district court properly disposed of each of the VRIP claims,

we will affirm the order of the district court.

3

I.

In this opinion, we confine our discussion to the VRIPs' bilateral contract theory.[2]  The VRIPs rest this claim on statements made in documents issued by Unisys in September, 1989 and July, 1991, extending an early retirement option and explaining the terms of the early retirement offers.  The VRIPs argue that the terms of these solicitation documents obligate Unisys to continue the post-retirement medical benefits plan and to fund a percentage of the cost of these benefits.  Because the terms of the 1989 and 1991 early retirement offers differ, we highlight the relevant features of each before discussing the applicable law.

<u>The 1989 Retirement Offer</u>

On September 15, 1989, Unisys announced a voluntary retirement incentive program for eligible employees.  This program was detailed in a September 25th mailing.  One of the "two major elements" of the plan was described as:

> a lifetime retirement enhancement that
> adds two years to your age and service
> for calculations of your benefits under

---

2.       The law as it applies to the remaining VRIP claims based on breach of contract and equitable estoppel is fully explored in our opinion in appeal numbered 94-1800.  Because the law set forth there applies equally to the claims of the VRIPs, in affirming the order of the district court we adopt that analysis and do not reiterate it here.  With respect to the breach of fiduciary duty claim, the district court found that "the Unisys VERIP plaintiffs . . . did not present any evidence which suggested a breach of fiduciary duty. . . ." 1994 W.L. 284079 at 33.  Having found no ground upon which to challenge this finding, we adopt the analysis of the district court; the VRIPs do not have a cognizable legal claim for breach of fiduciary duty.

> the Unisys Pension Plan formula and your
> points in determining your contribution
> rates for the Unisys Post-Retirement and
> Extended Disability Medical Plan.

The age and service enhancement was referred to elsewhere in the
document as a "lifetime service-related benefit."

The VRIPs contend that the "lifetime" statements
contained in the offering were made in conjunction with a
separate announcement by Unisys that those retiring outside the
time-frame of the offering would not be eligible to receive
Unisys-subsidized medical coverage once they reached the age of
65.  The VRIPs argue that the coupling of the early retirement
offer with the announcement limiting medical benefits for other
retirees led them to believe reasonably that they would have
greater retirement security if they opted for the early
retirement plan.  Use of the word "lifetime", they say, meant
that they were entitled to expect to receive medical benefits
indefinitely.

For purposes of evaluating the VRIPs' position, it is
important to note that the offering document also contained a
brief description of the Unisys Post-Retirement and Extended
Disability Plan and charted the employee's monthly percentage
costs.  The following language was included below the monthly
cost table:

> Unisys will attempt to maintain your
> contribution at the levels in effect during
> the year in which your participation begins.
> However, this cannot be guaranteed, given the
> unpredictable conditions that continue to
> influence post-retirement medical coverage,

5

such as rising medical costs and legislative actions.

### The 1991 Retirement Offer

In July, 1991, Unisys offered a second early retirement plan to employees retiring between July 25, 1991 and October 31, 1991. This plan did not feature enhanced medical benefits but did provide for certain incentive payments based on the employee's age and service. It also contained a lump-sum payment option not offered to regular retirees. Reference was made to the Unisys Post-Retirement and Extended Disability Plan and, as in the 1989 offer, a chart was included for purposes of calculating the employees' monthly percentage costs for medical coverage. Unlike the 1989 offer, however, the 1991 document contained an explicit reservation of rights clause:

> The Unisys Post-Retirement and Extended Disability Medical Plan provides the same coverages as the Unisys Medical Plan Option 2 available through the Unisys Flexible Benefits Program. Unisys cannot, however, guarantee that post-retirement medical coverage will not be changed in the future. The company continues to reserve the right to modify or terminate this coverage at any time. . . .
>
> Although Unisys will attempt to maintain your contributions at the levels in effect during the year in which your participation begins, the Company cannot guarantee that the contribution levels will remain unchanged in the future. The Company continues to reserve the right to increase contribution levels at any time.

The VRIPs argue that acceptance of this offer, too, created a contract obligating Unisys to continue providing

6

subsidized medical coverage.   They attempt to avoid the
reservation of rights language in the offer, arguing that Unisys
did not reserve the right to modify or terminate benefits for
those electing early retirement but intended that the clause
apply only to employees choosing to retire at a later time.   The
same logic is applied to the clause reserving the right to
increase contribution levels.

II.

The sole issue we must address is whether the 1989 or
1991 Unisys early retirement offers entitle the VRIPs to vested
medical benefits.   We conclude that they do not.

In support of their position that the early retirement
offers were sufficient to establish enforceable contracts for
lifetime medical benefits despite restrictive language in the
underlying benefits plans, the VRIPs cite one case in which a
district court held that an independent bilateral contract claim
may be cognizable under ERISA.   See Sprague v. General Motors
Corp., 843 F. Supp. 266 (E.D. Mich. 1994).   Relying on Sprague,
the VRIPs contend that statements made in the Unisys offers of
early retirement were sufficient to create contracts, the terms
of which were are variance with the underlying Unisys benefits
plans.   We are convinced that Sprague is factually inapposite.
We decline, therefore, to follow its reasoning.[3]

--------

3.         Because the Sprague facts are so dissimilar from those
presented here, we do not reach the question of whether we could
                                        (continued...)

7

In <u>Sprague</u>, 84,000 General Motors retirees and their
surviving spouses filed suit pursuant to ERISA in order to
prevent the restructuring of medical benefits.  From this large
pool of retirees, four classes were certified.  Two classes,
early retirees who signed long-form or short-form documents
accepting written offers of early retirement under incentive
plans, are relevant here.  These early retirees claimed that GM,
through a number of early retirement incentive plans, had offered
them a "special deal" not available to others.  By the terms of
this "deal", GM "agreed to continue health care benefits at no
cost to them throughout their retirement at the same level they
received before retirement."  943 F. Supp. at 269.  GM disputed
this, contending that it had never intended to vest lifetime
health benefits and, in fact, had promised early retirees nothing
more than enhanced pension benefits.

Because the court determined that the documents
evidencing acceptance of early retirement were facially
ambiguous, additional evidence was introduced to establish the
full scope of the early retirement package.  The GM early
retirees relied "on information provided to them, both written
and oral, at the time of retirement."  <u>Id.</u> at 270.

Sixty-four documents describing benefits available to
early retirees were introduced into evidence as was testimony
from human resources and supervisory personnel detailing

---

3.  (...continued)
or would, under our own precedent, adopt the <u>Sprague</u> legal
analysis in a factually similar case.

communications to the early retirees concerning medical benefits.

The court summarized this evidence as follows:

> Although various formulations exist,
> virtually all of the benefit explanations
> provided to the early retirees by GM contain
> statements regarding both the duration of
> health care benefits ("for life," "during
> retirement," "continued after retirement,"
> "lifetime," "will be continued," "for the
> rest of your lives"); and the cost of
> benefits ("no cost to retiree," "paid up,"
> "at corporation expense," "without cost,"
> "corporation paid basis," "at GM's expense,"
> "paid for life by General Motors," "fully
> paid by GM").

843 F. Supp. at 317.

> The court stressed that:

> GM repeatedly used the lifetime language.  It
> appears in many of the benefit summaries
> relied on by plaintiff class, in addition to
> the SPDs.  In addition, GM supervisors and
> personnel representatives often assured
> potential retirees that health care would be
> provided for their lifetimes.

Id.  The court concluded that the GM early retirees had reason to

believe that they had been offered and had accepted a special

package with features distinct from those available to regular

retirees; it was reasonable for them to assume that limitations

set forth in the regular benefits documents had no application to

them.  GM's claim that the "lifetime" language used in the

benefit summaries was of no legal consequence in light of

disclaimers in actual plan documents failed due to overwhelming

evidence of the employees' reasonable reliance on multiple

contrary statements made by those with authority to bind GM.

9

The overwhelming evidence of use of "lifetime" language
and the early retirees' reasonable reliance thereon is
conspicuously absent in this case.[4]  Here, there is no suggestion
in the offers of early retirement or in statements made to the
VRIPs that Unisys undertook a contractual obligation separate
from the underlying medical benefits plan available to all
retirees.  Like the regular retirees, the VRIPs were entitled to
receive benefits in accordance with the then-existing post-
retirement medical plan.

Most importantly, despite the VRIPs' creative argument
to the contrary, it is also clear that both the 1989 and 1991
offering documents "specifically alerted the [VRIP] participants
. . . that the contribution rates were not guaranteed.[5]  The 1989
offering stated that contribution rates "cannot be guaranteed."
The 1991 offering is even more explicit in that it includes an
unambiguous reservation of rights clause.  These disclaimers are

---

4.        We recognize that the 1989 VRIP did contain the phrase
"lifetime retirement enhancement."  The use of the word
"lifetime" in this context is dramatically different from the
assurances detailed in Sprague.  We cannot accept the VRIPs'
argument that use of this phrase in the offering document was
sufficient to allow them to conclude reasonably that medical
benefits had vested.  See Chevrin v. Seelzer Bingham Pumps, Inc.,
1990 W.L. 303125 (D. Ore. 1990) (no ambiguity created where plan
document used the term "Lifetime Maximum Benefit").

5.        The district court, in an abundance of caution, went
beyond the clear language in the offering documents to consider
the reservation of rights clause set forth in the summary plan
description.  We are convinced, however, that it is not necessary
to look beyond the offering documents in order to reach a
disposition with respect to the VRIPs' bilateral contract claim.
The limitations contained in the offering are consistent with
those in the underlying plan and create no ambiguity.

10

sufficient to defeat the VRIPs' contention that they reasonably believed that their medical benefits were vested.

While we sympathize with the unfortunate position in which the VRIPs find themselves, we are not able to offer them legal redress. We agree with the district court that "Unisys unambiguously reserved its right to increase contribution rates and/or terminate the medical plan", 1994 W.L. 284079 at 31 (footnote omitted), and give weight to its finding that the VRIPs "presented no testimony from any VRIP participant who made a specific inquiry about the duration of his medical benefits and was given misleading, or false, information." Id. We conclude, therefore, that the VRIPs have failed to establish the existence of an enforceable bilateral contract.

### III.

Having considered each of the VRIP claims of error and determining that the district court did not err, we will affirm the order of the district court.

11

# EXHIBIT 3

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

————————————

Nos. 07-3369, 08-3025, and 08-3545

————————————

IN RE: UNISYS CORPORATION RETIREE
MEDICAL BENEFITS ERISA LITIGATION

HARLEY J. ADAIR, ET AL.,

v.

UNISYS CORPORATION,

Appellant

————————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania,
D.C. No. 03-cv-03924 (Honorable Bruce W. Kauffman)

————————————

## APPELLEES' MOTION FOR RECONSIDERATION
## AND RESPONSE TO MOTION TO STAY THE MANDATE

Alan M. Sandals (PA Bar 36044)
Scott M. Lempert (PA Bar 76765)
**SANDALS & ASSOCIATES, P.C.**
One South Broad Street
Suite 1850
Philadelphia, PA  19107-3418
(215) 825-4000

Counsel for Appellees Theodore F. Botzum, et al.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

ARGUMENT ........................................................................................................ 1

I.    The Retirees Have Substantial Grounds for Opposition to the Motion for Stay of the Mandate.  FRAP 27(a)(3)(A) Expressly Affords Them the Opportunity to File Their Opposition by October 20, 2009.  The Order Granting the Motion Before the Opposition was Filed Should Be Reconsidered and Vacated. ..........................................................................1

II.   A Stay of the Mandate is An Extraordinary Remedy Which Is Granted Only Upon a Showing of Three Conjunctive Factors. ...................................3

III.  Unisys Has Not Demonstrated a Likelihood of Irreparable Injury. ............. 6

IV.  Unisys Has Not Demonstrated a Reasonable Probability That the Supreme Court Will Grant Certiorari .......................................................... 9

V.   Unisys Has Not Demonstrated a Reasonable Possibility That the Supreme Court Would Reverse This Court's Judgment ........................... 15

CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                                             **Page**

*Acierno v. New Castle County,* 40 F.3d 645 (3d Cir. 1994) .....................................7

*Continental Group, Inc. v. Amoco Chemicals Corp.,*
  614 F.2d 351 (3d Cir. 1980).....................................................................................7

*Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 74 (1995) .................................14

*Elliott v. Kiesewetter,* 98 F.3d 47 (3d Cir. 1996).......................................................8

*Frahm v. Equitable Life Assur. Society of the United States,* 137 F.3d 955
  (7th Cir. 1998), *cert. denied*, 525 U.S. 817 (1998)................................................12

*Graves v. Barnes,* 405 U.S. 1201 (1972) .......................................................... 5, 16

*In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137 (3d Cir. 1982)........8

*Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797 (3d Cir. 1989) ........7

*Inter-Modal Rail Employees Assoc. v. Atchison, Topeka, & Santa Fe Ry. Co.,*
  520 U.S. 510 (1997)...............................................................................................14

*Ladouceur v. Credit Lyonnais,*   F.3d  , 2009 U.S. App. LEXIS 21396
  (2d Cir. Sept. 30, 2009).........................................................................................12

*McCall v. Burlington Northern Santa Fe Co.,* 237 F. 3d 506 (5th Cir. 2000),
  *cert. denied,* 534 U.S. 822 (2001).........................................................................12

*Nara v. Frank,* 494 F.3d 1132 (3d Cir. 2007).................................................. *passim*

*Pegram v. Herdrich,* 520 U.S. 211 (2000).............................................................16

*Rostker v. Goldberg,* 448 U.S. 1306 (1980) ............................................................5

*Rubin v. United States,* 524 U.S. 1301 (1998).........................................................5

## Cases                                                                                            Page

*Ruckelshaus v. Monsanto Co.,* 463 U.S. 1315 (1983) ...............................................6

*Sprague v. General Motors Corp.,* 133 F. 3d 388 (6th Cir. 1998) (*en banc*),
  *cert. denied,* 524 U.S. 923 (1998)...........................................................................11

*Vallone v. CNA Financial Corp.,* 375 F.3d 623 (7th Cir. 2004),
  *cert. denied,* 543 U.S. 1021 (2004)........................................................................12

*Whalen v. Roe,* 423 U.S. 1313 (1975) ...............................................................5, 6

## Court Rules

FRAP 27(a)(3)(A) ........................................................................... 1, 2, 3

FRAP 41 ...................................................................................................................3

FRAP 41(d) .............................................................................................................2

FRAP 41(d)(2)(A) ...................................................................................................3

FRAP 41(d)(2)(C) .................................................................................................17

L.A.R. 27.3 .............................................................................................................2

L.A.R. 27.4 .............................................................................................................2

L.A.R. 27.7 .............................................................................................................2

3d Cir. Internal Operating Procedure 10.8.2.......................................................4, 8

## Other Authorities

Eugene Gressman, et al., *Supreme Court Practice* (9th ed. 2007) ...............4, 14, 15

20A *Moore's Fed'l Practice – Civil* § 341.14[2] (3d ed. 2009)................................4

iii

Appellees Theodore F. Botzum, et al. ("the retirees") move for reconsideration of the Order, entered October 15, 2009, which summarily granted the Motion to Stay the Mandate filed by defendant-appellant Unisys Corporation on October 8, 2009.  The retirees oppose the motion and were in the process of preparing their response for timely filing under FRAP 27(a)(3)(A) on October 20, 2009 at the time the Court issued the Order.

Regarding the merits of the motion, Unisys has failed to establish any of the three mandatory, conjunctive elements required to obtain the extraordinary relief it requests.  Having lost in both the district court and this Court, Unisys no longer has any lawful basis to refuse to pay over the attorneys' fees and expenses that the district court ordered it to pay 16 months ago.  The rulings in this case are entitled to a presumption of correctness.  The unfounded hope of Unisys that it might secure review and reversal by the Supreme Court in this highly fact-bound case is not a sufficient basis to stay the mandate.

## **ARGUMENT**

**I.    The Retirees Have Substantial Grounds for Opposition to the Motion for Stay of the Mandate.  FRAP 27(a)(3)(A) Expressly Affords Them The Opportunity to File Their Opposition by October 20, 2009.  The Order Granting the Motion Before the Opposition was Filed Should Be Reconsidered and Vacated.**

By its Opinion and Judgment in these appeals dated September 2, 2009, the Court affirmed the judgment of liability and injunction entered in favor of the

retirees, as well as the district court's June 26, 2008 Order awarding to the retirees and their counsel attorneys' fees and expenses for work performed at the district court level through the date of their August 31, 2007 Fee Petition. *See* September 2, 2009 Opinion ("Op.") at 40-43. The petition by Unisys for panel rehearing and rehearing en banc was denied by Order dated October 2, 2009.

At 7:59 P.M. on Thursday, October 8, 2009, Unisys filed its Motion for Stay of the Mandate. The motion was neither an uncontested motion governed by 3d Cir. L.A.R. 27.3, nor a motion for summary action governed by L.A.R. 27.4, nor a motion requesting expedited consideration governed by L.A.R. 27.7. Accordingly, the due date for the retirees' response opposing the motion was governed by FRAP 27(a)(3)(A), which provides that a response must be filed within 8 days after service. Under FRAP 26(a)(2), an 8-day response period is calculated exclusive of intermediate weekends and holidays. Accordingly, the retirees' response was due on Tuesday, October 20, 2009.

FRAP 27(a)(3)(A) also states that, "A motion authorized by Rules 8, 9, 18, or 41 may be granted before the 8-day period runs only if the court gives reasonable notice to the parties that it intends to act sooner." The Unisys motion is made under FRAP 41(d) and is governed by this safeguard.

Inasmuch as the Court did not notify the parties that it intended to act on the motion in advance of the normal response date, the retirees were in the process of

2

preparing their memorandum in opposition for timely filing on October 20, 2009 when the Order granting the motion was issued on the afternoon of October 15, 2009.

Pursuant to the provisions FRAP 27(a)(3)(A), this memorandum in opposition is timely filed and presents substantial grounds for denying the relief requested by Unisys. The retirees therefore respectfully request that the Order dated October 15, 2009 be reconsidered and vacated, and that the motion be decided on adversary briefing, including the retirees' substantive response which follows in the balance of this memorandum.

## II. A Stay of the Mandate is An Extraordinary Remedy Which Is Granted Only Upon a Showing of Three Conjunctive Factors.

Unisys skates lightly over the stringent requirements for a stay of the mandate. This is not surprising given its inability to satisfy these requirements.

A stay of the mandate following an unsuccessful appeal is an extraordinary remedy. FRAP 41(d)(2)(A) expressly states that a movant "must show that the certiorari petition would present a substantial question and that there is good cause for a stay." This language was added in 1994 to "alert the parties to the fact that a stay of mandate is not granted automatically and to the type of showing that needs to be made." Advisory Committee Note, FRAP 41 (1994). The Note further states that, "The Supreme Court has established conditions that must be met before it will stay a mandate. *See* Robert L. Stern, et al., Supreme Court Practice § 17.19 (6th

ed. 1986)." *Id.* The cited section of this authoritative treatise now appears as § 17.13. *See* Eugene Gressman, et al., *Supreme Court Practice* § 17.13 at 871-883 (9th ed. 2007) (hereinafter "*Supreme Court Practice*").

There is no Local Appellate Rule governing motions for stay of the mandate. However, Internal Operating Procedure 10.8.2 states that, "It is the practice of this court not to grant such a motion [for stay of mandate] unless the failure to grant a stay affects a substantive right of the applicant." 3d Cir. IOP 10.8.2.

A motion for stay of the mandate functions like a motion for a temporary injunction and is subject to the same stringent requirements. "Since the stay of a mandate is a form of temporary injunction, the circuit court's inquiry centers on whether the applicant will suffer irreparable injury, and whether the applicant has a reasonable probability of success on the merits." 20A *Moore's Fed'l Practice – Civil* § 341.14[2] (3d ed. 2009). "A stay is a form of temporary injunction, and in general is governed by the same principles, modified to some extent because the application is made after the case has already been lost in at least one court." *Supreme Court Practice* § 17.13 at 871.

The Court summarized the stringent requirements for a stay of mandate in *Nara v. Frank*, 494 F.3d 1132 (3d Cir. 2007) (Nygaard, J., in chambers), noting that a stay is reserved for "exceptional cases":

> In exceptional cases, a party may obtain a stay of our mandate if it
> can demonstrate that its petition presents a "substantial question and

> that there is good cause for a stay." FED. R. APP. P. 41(d)(2)(A)
> (2007). This standard requires the movant to show: (1) a reasonable
> probability that the Supreme Court will grant *certiorari*; (2) a
> reasonable possibility that at least five Justices would vote to reverse
> this Court's judgment; and (3) a likelihood of irreparable injury absent
> a stay. In a close case, the movant should make a showing that, on
> balance, the interests of the parties and the public favor a stay.
> *Rostker v. Goldberg*, 448 U.S. 1306, 1308, (1980) (Brennan, J., in
> chambers); *Bricklayers Local 21 v. Banner Restoration, Inc.*, 384 F.3d
> 911, 912 (7th Cir. 2004) (Ripple, J., in chambers); *Doe v. Miller*, 418
> F.3d 950, 951 (8th Cir. 2005); FED. R. APP. P. 41(d) advisory
> committee's note.

*Nara*, 494 F.3d at 1133. These requirements are conjunctive and Unisys must demonstrate all of them. *Id.* (applicant "has failed to meet these requirements"); *see also Rubin v. United States*, 524 U.S. 1301, 1302 (1998) (Rehnquist, C.J., in chambers) ("a stay applicant must also show").

Unisys quotes only portions of this language from *Nara* (Mem. at 3) and does not acknowledge the Court's introductory qualifying statement – that a stay is reserved for "exceptional cases." Unisys also fails to acknowledge that the cited Supreme Court decision likewise states that a stay is appropriate "only in those extraordinary cases where the applicant is able to rebut the presumption that the decisions below – both on the merits and on the proper interim disposition of the case – are correct." *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers), *citing Whalen v. Roe*, 423 U.S. 1313, 1316-17 (1975) (Marshall, J., in chambers). The decision of this Court "is entitled to a presumption of validity." *Graves v. Barnes*, 405 U.S. 1201, 1203 (1972) (Powell, J., in chambers). Unisys

therefore "must meet a heavy burden of showing not only that the judgment of [this] court was erroneous on the merits, but also that [it] will suffer irreparable injury if the judgment is not stayed." *Whalen*, 423 U.S. at 1316.

Unisys has not established any of the requirements for a stay and its motion should be denied.

## III.  Unisys Has Not Demonstrated a Likelihood of Irreparable Injury.

Unisys has failed to demonstrate "a likelihood of irreparable injury absent a stay." *Nara*, 494 F.3d at 1133.  An applicant's failure to demonstrate irreparable injury from denial of a stay "necessarily decides the application and renders unnecessary consideration of [the remaining factors]." *Whalen*, 423 U.S. at 1317-18; *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1317 (1983) (Blackmun, J., in chambers).

Unisys admits that it made no objection to the effectiveness of the injunction requiring payment of benefits to the retirees, that the injunction took effect in September 2007 as ordered, and that it does not seek a stay of this relief.  (Mem. at at 15).  The sole argument Unisys makes in support of its claim of irreparable injury is a bare, unfounded assumption that if it pays over the fee and expense award, it might later have "little or no ability to recover that payment" *if* certiorari were granted and *if* the judgment were reversed.  (Mem. at 15).  On its face, this one-sentence argument rests solely on supposition and speculation that the six

recipient law firms would dissipate the funds or otherwise be unable to repay the funds in the unlikely scenario envisioned by Unisys. The argument also concedes that there in fact is no "likelihood" of immediate, irreparable injury, only a *possibility* of some *potential future* harm if, contrary to the history of this case, all later rulings unexpectedly were to go in favor of Unisys.

Such speculation about remote, contingent injury is insufficient to establish "a likelihood of irreparable injury." *See Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994); *Continental Group Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 358 (3d Cir. 1980) ("More than a risk of irreparable harm must be demonstrated;" movant must make a "clear showing of immediate irreparable injury" or a "presently existing actual threat").

Unisys' unsupported, contingent claim of possible irreparable injury at some future time also ignores settled law in this Circuit that "economic loss does not constitute irreparable harm." *Acierno*, 40 F.3d at 653. Even indulging Unisys in its unreasonable speculation that it would secure reversal and might have some difficulty in obtaining repayment of the funds, this unlikely scenario still would not be sufficient under Third Circuit law. "We have never upheld an injunction where the claimed injury constituted a loss of money or loss capable of recoupment in a proper action at law." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d

797, 801 (3d Cir. 1989), *quoting In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1145 (3d Cir. 1982).[1]

Unisys also is mistaken in asserting a likelihood of injury to "Unisys' substantive rights in the funds." (Mem. at 15). As a matter of fact, Unisys lost its appeal and the fee award is not its property. As stated in IOP 10.8.2, the Court does not grant motions for stay of mandate "unless the failure to grant a stay affects a substantive right of the applicant." But a party has no substantive right to hold on to money that an appeals court has determined belongs to adversaries in litigation. The retirees and their counsel have stood as involuntary lenders to Unisys for 16 months. Further delay is not justified.

Finally, this is not "a close case" on the element of irreparable injury. *Nara*, 494 F.3d at 1133. Even if it were a close case and the balance of equities were considered, Unisys has not shown "that, on balance, the interests of the parties and the public favor a stay." *Id.* Regarding the parties, the equities clearly favor the retirees and their counsel, who have had to battle Unisys for many years and

---

[1]    Although the Court has upheld "asset freezes" to preserve a money judgment, a movant for this type of "extraordinary" remedy is required to actually show "that the freeze is necessary to prevent the consumption, dissipation or fraudulent conveyance of the assets" that the movant seeks to recover in the litigation. *Elliott v. Kiesewetter*, 98 F.3d 47, 57-58 (3d Cir. 1996) (case demanded "extraordinary measures" because jury had already found that defendant had lied to and stolen from family members). In this case, of course, the retirees and their counsel are the judgment holders – not Unisys – and the company has made no showing of any cognizable injury if control of the fee award passes to its rightful owners now that the appeal has finally been decided in their favor.

already suffered needless delays as a result of its litigation conduct.[2]  On the other

hand, Unisys has been adjudged, on the basis of well-settled law applied to

extensive findings it did not challenge on appeal, to have violated its strict

fiduciary duties.  This conclusion has been reached unanimously by *five* judicial

officers of the United States.  Regarding the public interest, it is self-evident that

the public has no interest in enabling an ERISA violator to delay relief.  To the

contrary, the public interest favors effective enforcement of ERISA, which is

promoted by prompt payment of fees that courts have ordered a losing defendant to

pay.  Unisys cannot demonstrate that the equities weigh in favor of a stay.

The failure by Unisys to establish a likelihood of immediate, irreparable

injury is itself a sufficient ground to deny its motion.

## IV.  Unisys Has Not Demonstrated a Reasonable Probability That the Supreme Court Will Grant Certiorari.

Unisys also has failed to demonstrate "a reasonable probability that the

Supreme Court will grant *certiorari*."  *Nara*, 494 F.3d at 1133.

---

[2]     Regrettably, the current stay motion is not the first time Unisys has attempted to misuse court procedures to delay payment of fees to the retirees' counsel.  After the retirees filed their Fee Petition on August 31, 2007, Unisys stipulated that its opposition would be filed by October 15, 2007 (Civ. No. 03-3924, Dkt.. No. 70, filed September 17, 2007).  But on October 10, 2007, it moved to "defer" all fee proceedings until its merits appeal was resolved, an approach that would have delayed the award and ultimate receipt of fees by adversary counsel by as much as two years.  The district court denied the Unisys motion by Opinion and Order dated December 5, 2007.  (Dkt. # 77, A6676) ("Given the fact that some of the legal services in this case were rendered as early as 1994, the Court declines to impose further delay on resolution of the Fee Petition.").

In order to secure review, Unisys would have to persuade four Justices that a Supreme Court ruling in this narrow and fact-bound case would resolve a circuit conflict or advance development of an unsettled, important question of law. Before reaching any legal issues, the Justices would first have to conclude that this particular case, with its highly developed, idiosyncratic factual record, is a suitable vehicle for any new legal rulings. Although Unisys chooses to mischaracterize the record and basis for the decision (Mem. at 5), the Justices will be confronted with findings and conclusions such as these:

> "The Magistrate Judge was correct to conclude that these communications amounted to misrepresentations." (Op. at 21)

> "Although the statement that 'benefits would cost a retiree $ 20 per month until age sixty-five, after which time there would be no cost to the retiree' was not in and of itself false, it was nevertheless a misrepresentation because it created the impression that the retirees would enjoy these benefits for the remainder of their lifetimes without the possibility of change." (Op. at 21-22) (citations to Report and Recommendation omitted here and below)

> "Unisys' arguments that it disclosed its reservation of rights in the summary plan descriptions and other documentation is unavailing because Unisys did not present this information when it was counseling its employees on their retirement decisions." (Op. at 24)

> "Unisys 'knew of the confusion generated by its silence.'" (Op. at 24)

> "Unisys 'knew that the retirement decision was significant, that the cost of retiree medical benefits was significant, and that participation in a specific medical plan was considered a powerful motivation in the retirement decision.'" (Op. at 25)

"'[Unisys] was aware that its employees were confused about benefits.'" (Op. at 25)

"Unisys was aware of pervasive confusion among its employees." (Op. at 26)

"[T]he District Court determined that . . . Unisys' 'conduct was undertaken knowingly.'" (Op. at 41)

Unisys did not challenge these and other numerous, well-documented findings that it knowingly misled the retirees into believing they would have secure medical benefits for life. (Op. at 18). These findings make the case *sui generis* and a highly unsuitable candidate for review by the Supreme Court. *See Supreme Court Practice* § 4.14 at 270 ("The Supreme Court will usually deny certiorari when review is sought of a lower court decision that turns solely upon an analysis of the particular facts involved"). Moreover, the Supreme Court is generally not concerned with "misapplication of a properly stated rule of law." Supreme Court Rule 10. Unisys does not acknowledge these fundamental problems.

Unisys argues that the decision in this case conflicts with decisions of other circuits and warrants a grant of certiorari. However, the cited decisions themselves either distinguished factual circumstances that were found to be present in this case or found as a matter of fact that the claimed misstatements in those cases were correct and not misleading. *See Sprague v. General Motors Corp.*, 133 F. 3d 388, 405-06 (6th Cir. 1998) (en banc), *cert. denied,* 524 U.S. 923 (1998) (court pointed out that different case would have been presented if record showed any plaintiff

had "received a misleading answer, or had GM on its own initiative provided misleading information about the future of the plan"); *Frahm v. Equitable Life Assur. Society of the United States*, 137 F.3d 955, 959 (7th Cir. 1998), *cert. denied*, 525 U.S. 817 (1998) ("Equitable did not undertake a campaign of disinformation that led employees to surrender their benefits. The district court found . . . that Equitable trained its benefits staff to give correct advice"); *Vallone v. CNA Financial Corp.*, 375 F.3d 623, 641-42 (7th Cir. 2004), *cert. denied*, 543 U.S. 1021 (2004) ("no evidence . . . that Continental falsely indicated to any employee that the HCA benefit was irrevocable or that Continental was aware that the early retirees were coming to the mistaken conclusion that 'lifetime' equated to 'vested'" and "no evidence of any intent to purposefully mislead employees"); *Ladouceur v. Credit Lyonnais*, F.3d , 2009 U.S. App. LEXIS 21396 at * 7-9 (2d Cir. Sept. 30, 2009) ("We hold only that a party alleging a breach of fiduciary duty *on the basis of a statement purporting to alter the terms of an ERISA benefit plan* must point to a written document containing the alleged statement;" expressly distinguishing prior decisions in *Abbruscato* and *Mullins*, which arose out of factual circumstances analogous to this case) (emphasis in original); *McCall v. Burlington Northern Santa Fe Co.*, 237 F. 3d 506, 511 (5th Cir. 2000), *cert. denied,* 534 U.S. 822 (2001) ("we find no genuine issue of material fact regarding the truth of the statement" that any forthcoming pension enhancements would not

be as good as current one; because statement was truthful, "it cannot support a cause of action . . . for breach of fiduciary duty based on a material misrepresentation").

So there is no conflict.  The cases cited by Unisys merely establish that divergent facts lead to different rulings.  No circuit has ruled that an employer fiduciary may engage in the widespread, continuing, and knowing conduct found in this case to have been committed by Unisys.  No circuit has called into question the basic principles governing the disclosure duties of ERISA fiduciaries that are the framework for liability.  At best for Unisys, there may be some variation in the way that these basic principles are applied to the facts from case to case.  But the Supreme Court is not in the business of weighing evidence.  Certiorari "is rarely granted when the asserted error consists of erroneous factual findings or the misapplication of a properly stated rule of law."  Supreme Court Rule 10 ("Considerations Governing Review on Certiorari").

Even if some divergence could be detected among the rules of decision as articulated by the various courts of appeals, it would not be enough to make this case "cert worthy."  It is only a conflict "on the same *important* matter" that can weigh in favor of certiorari.  Supreme Court Rule 10(a) (emphasis added).  The Supreme Court also does not grant review when asserted conflicts between circuits are neither well-developed, nor relevant to the ultimate outcome of the case sought

to be reviewed, nor fairly presented by the case, nor where an alternative ground for decision appears. *See Supreme Court Practice* §§ 4.4(b), 4.4(e), 4.4(f), and 4.4(g) at 246-49.

It bears mention that Unisys cited two of these decisions, *Sprague and McCall*, in its opening appeal brief filed December 3, 2008, but this Court found no reason to discuss them in its opinion. In addition, Unisys did not cite *Frahm* in this Court, nor did it cite *Vallone* either in this Court or the district court. It is also worth noting that certiorari was denied in each case cited by Unisys (other than the very recent decision in *Ladouceur*).

Unisys also contends that the decision otherwise raises important questions and is contrary to two Supreme Court decisions, *Inter-Modal Rail Employees Assoc. v. Atchison, Topeka, & Santa Fe Ry. Co.*, 520 U.S. 510 (1997), and *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 74 (1995). But Unisys has not previously cited *Inter-Modal*, thus demonstrating by its own conduct that the decision is neither directly pertinent nor controlling. Its invocation of *Curtiss-Wright* also is unavailing. The distinctions between settlor and fiduciary conduct, and welfare and pension benefits, have been noted and taken into account by the Court since its earliest decisions in this case in 1995. It is of course true that employers are generally free to offer or terminate medical benefits. But it is also true, and uniform law in all federal courts, that employers and other fiduciaries

14

may not misrepresent those benefits and mislead employees, as Unisys did here. Both sets of rules operate, and the Court has been faithful to both in its decision.

There is no conflict with decisions of the Supreme Court. "To justify a grant of certiorari, the conflict [with Supreme Court decisions] must truly be direct and must be readily apparent from the lower court's rationale or result." *Supreme Court Practice*, § 4.5 at 250. Nor is there an "important question of federal law that has not been, but should be, settled" by the Court. Supreme Court Rule 10(c). In fact, the Supreme Court has already expressed its views on ERISA disclosure duties and the decision here is fully consistent with them. *See* Section V below.

## V. Unisys Has Not Demonstrated a Reasonable Possibility That the Supreme Court Would Reverse This Court's Judgment.

Unisys also failed to demonstrate "a reasonable possibility that at least five Justices would vote to reverse this Court's judgment." *Nara*, 494 F.3d at 1133.

As the previous Section shows, this case is fact-specific, idiosyncratic and readily distinguishable from the decisions that Unisys claims to be in conflict. The decision of this Court applies well-settled, uncontroversial rules to the unique but uncontested facts of record and does not conflict with any Supreme Court decision.

Unisys has shown no "reasonable possibility" that the Supreme Court would reverse the decision in this case and absolve it from liability. Unisys is no doubt aware that six of the current justices joined in a unanimous opinion by Justice

Souter acknowledging the potency of ERISA disclosure duties and favorably citing

one of this Court's leading precedents in support:

> Although we are not presented with the issue here, it could be argued that Carle is a fiduciary insofar as it has discretionary authority to administer the plan, and so it is obligated to disclose characteristics of the plan and of those who provide services to the plan, if that information affects beneficiaries' material interests. See, e.g., *Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc.,* 93 F.3d 1171, 1179-1181 (CA3 1996) (discussing the disclosure obligations of an ERISA fiduciary); cf. *Varity Corp. v. Howe,* 516 U.S. 489, 505 (1996) (holding that ERISA fiduciaries may have duties to disclose information about plan prospects that they have no duty, or even power, to change).

*Pegram v. Herdrich*, 520 U.S. 211, 227 n. 8 (2000).[3] It is difficult to imagine a

more clear indication that a majority of the Supreme Court concurs in the ERISA

rules of law which have been applied in this case to the record conduct of Unisys.

There accordingly is no "reasonable possibility" that the Supreme Court

would find any error in this Court's identification of the rules of law governing this

case or conclude that this Court applied the rules incorrectly. The Supreme Court

also is unlikely to overturn a decision by a court "that was closer to the facts" and

gave "careful attention" in "opinions [that] attest to a conscientious application of

principles enunciated by [the Supreme Court]." *Graves*, 405 U.S. at 1203-04.

There is no reasonable possibility that, in the face of the extensive and uncontested

---

[3] Justices Stevens, Scalia, Kennedy, Thomas, Ginsburg, and Breyer joined in the quoted *Pegram* opinion and remain on the Court.

findings of fiduciary misconduct by Unisys, five Justices would conclude that the rules had been misapplied and that Unisys should be absolved of liability.

Whether Unisys presents these or other arguments in its quest for certiorari, the fact remains that its points have been extensively briefed and thoroughly examined over a period of four years by the magistrate judge, the district court, and this Court. Any further delay in the issuance of the mandate is not justified.[4]

## CONCLUSION

For the reasons stated and based on the entire record of these appeals, the retirees and their counsel respectfully request that the Court reconsider and vacate the Order dated October 15, 2009, deny the Motion for Stay of the Mandate, and direct the Clerk to issue the mandate without further delay.

Dated: October 19, 2009          Respectfully submitted,

                                  s/ Alan M. Sandals
                                 Alan M. Sandals (PA Bar 36044)
                                 Scott M. Lempert (PA Bar 76765)
                                 **SANDALS & ASSOCIATES, P.C.**
                                 One South Broad Street
                                 Suite 1850
                                 Philadelphia, PA  19107-3418
                                 (215) 825-4000

---

[4] For the reasons stated, Unisys is not entitled to a stay of the mandate. If a stay nevertheless were entered, Unisys would be required to continue to post an adequate and satisfactory bond as security for payment of the fees and expenses, as Unisys agrees in its memorandum (at 2, 15) and as provided by FRAP 41(d)(2)(C).

Charles Gottlieb
**GOTTLIEB & GOREN, P.C.**
30150 Telegraph Rd.
Suite 249
Bingham Farms, MI  48025

Joseph A. Golden
**PITT, McGEHEE, PALMER,**
  **RIVERS & GOLDEN, P.C.**
117 West 4th Street
Suite 200
Royal Oak, MI  48067

Clayton H. Thomas Jr.
**CLAYTON H. THOMAS JR. AND**
**ASSOCIATES**
1500 John F Kennedy Blvd.
Suite 1100
Philadelphia, PA 19102

Jonathan D. Berger
Charles P. Goodwin
Bret P. Flaherty
**BERGER & MONTAGUE, P.C.**
1600 Locust Street
Philadelphia, PA  19103
(215) 875-3000

Henry H. Rossbacher
James S. Cahill
**THE ROSSBACHER FIRM**
811 Wilshire Boulevard
Suite 1650
Los Angeles, CA  90017
(213) 895-6500

Counsel for Appellees Theodore F. Botzum, et al.

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I hereby certify that I am a member of the bar of this Court.

      s/ Alan M. Sandals      

Alan M. Sandals
**SANDALS & ASSOCIATES, P.C.**
One South Broad Street
Suite 1850
Philadelphia, PA  19107

## CERTIFICATION OF ELECTRONIC FILING AND VIRUS CHECK

I hereby certify that the text of the electronic PDF version of the foregoing Appellees' Motion for Reconsideration and Response to Motion to Stay the Mandate which was filed electronically with the Court is identical to the text of the paper copy of the Response which was served on counsel.

I hereby further certify that a virus check of the electronic PDF version of the brief was performed using McAfee Antivirus Software, and the PDF file was found to be virus-free.

s/ Scott M. Lempert
Scott M. Lempert

## CERTIFICATE OF SERVICE

I hereby certify that on this  19th  day of October, 2009, I caused a copy of

the foregoing Appellees' Motion for Reconsideration and Response to Motion to

Stay the Mandate to be served upon the following counsel:

By CM/ECF Filing and First Class Mail:

Joseph J. Costello, Esquire
**MORGAN, LEWIS & BOCKIUS, LLP**
1701 Market Street
Philadelphia, PA  19103


Joseph A. Teklits, Esquire
**UNISYS CORPORATION**
P.O. Box 500
Townshipline & Union Meeting Roads
Blue Bell, PA  19424

Counsel for Appellant Unisys Corporation


_____ s/ Scott M. Lempert _____
Scott M. Lempert